| | |
|---|---|
| NORTH CAROLINA<br>COUNTY OF WAKE | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>FILE NO. _____ |

FILED 2019 AUG 16 PM 4:16

| | |
|---|---|
| U.S. Tobacco Cooperative Inc.,<br><br>   Plaintiff,<br>v.<br>Certain Underwriters at Lloyd's subscribing to Policy Numbers B1353DC1703690000 and B1353DC1602041000,<br><br>   Defendants. | **COMPLAINT**<br><br>**AND JURY DEMAND** |

## COMPLAINT

Plaintiff U.S. Tobacco Cooperative Inc. ("USTC") files this Complaint against Certain Underwriters at Lloyd's subscribing to Policy Numbers B1353DC1703690000 and B1353DC1602041000 (collectively, the "Insurers") and alleges as follows:

### INTRODUCTION

1. This case arises from USTC's Insurers' bad faith failure to reimburse USTC for the millions of dollars of losses it has incurred as a result of physical loss of and damage to its tobacco product arising from mold, humidity, water damage, moisture, flooding and / or other similar perils.

2. USTC "is a grower-owned marketing cooperative based in Raleigh, North Carolina." It produces some of the "finest, most compliant and most sustainable flue-cured tobacco in the world," grown by over 700-member growers throughout the Southeast. USTC has over 200 employees and 13 locations throughout the United States, including in Fuquay-Varina, North Carolina. *See About Us*, US TOBACCO COOPERATIVE, https://www.usleaf.com/about/.

3. USTC's Insurers issued Marine Stockthroughput Insurance Policies to USTC for the policy periods April 30, 2016 through April 30, 2017, and April 30, 2017 through April 30, 2018, with the following respective policy numbers: B1353DC1602041000 ("2016-17 Policy") and B1353DC1703690000 ("2017-18 Policy", and collectively, with the 2016-17 Policy, the "Policies").

4. The Policies each provide $30,000,000 of broad coverage for "any one loss any one Location," above a $10,000 deductible, for "all risks of physical loss of or damage to the subject-matter insured from any external cause." The phrase "any external cause" is not defined in the Policies, and the Policies do not exclude loss or damage arising from mold, humidity, water damage, moisture, flooding and / or similar perils.

5. The Policies apply to a wide array of USTC's products, namely, "Goods and/or Merchandise of every description . . . handled by the Insured in the course of their business and/or in the care, custody and control of the Insured whether in transit (including domestic and internal transits) or store or elsewhere anywhere in the World . . . ."

6. In October 2016, Hurricane Matthew struck North Carolina, causing widespread flooding, including in Fuquay-Varina, North Carolina and the surrounding area. The flooding breached certain buildings in USTC's Fuquay-Varina location, but it did not appear to reach the cartons of product stored in the warehouses because the cartons are all stored elevated off the floor on dunnage.

7. Months later, in early 2018, USTC discovered that product in multiple of its Fuquay-Varina buildings had suffered damage as a result of mold, humidity, water damage, moisture, flooding, and / or similar perils. More specifically, USTC stores its product in rows of cartons, which are stacked upon each other. While USTC was moving certain of its product to

2

another warehouse, USTC discovered that product stored on the bottom rows throughout the Fuquay-Varina location—regardless of crop year or crop grade—had been damaged.

8. USTC provided timely notice of the loss to its Insurers and has complied with all other provisions of the Policies.

9. The Insurers acknowledged that USTC suffered physical loss of and damage to its product, as evidenced by, among other things, the fact that the Insurers engaged a salvage company to reduce losses arising from the lost / damaged product. The Insurers have also stated that, "based on the investigation to date, it appears that seasonal temperature changes and ambient, atmospheric moisture levels has led to moisture migration from the cement floor of the warehouses to the bottom cartons." In doing so, the Insurers admitted that an external cause—moisture migration from the cement floor of the warehouse—caused physical loss and damage to USTC's product. This physical, external loss is a fortuitous event, resulting not just from some internal characteristic of the tobacco product, but from water damage, moisture, humidity, flooding, and / or other similar perils. Indeed, in USTC's more-than-seventy years of experience of storing this tobacco product, USTC has never had any similar issues in its Fuquay-Varina location or any other of its warehouses around the country.

10. Nevertheless, the Insurers have refused to reimburse USTC for its losses in bad faith. In a complete about-face from their initial conclusion, the Insurers now argue that "mould spores [are] natural and inherent to tobacco," and thus there is no coverage under the Policies The Insurers make this claim even though they have stated their belief that external moisture issues caused loss and damage to the product, and despite the fact that they have collected valuable premiums from USTC for years, in exchange for broad coverage against "all risks of physical loss of or damage to" USTC's product resulting from "any external cause," without any exclusions for

3

loss or damage arising from mold, humidity, water damage, moisture, flooding, and / or other similar perils.

11. The Insurers have made no attempt to explain how or why the water damage, moisture, humidity, flooding, and other similar perils do not constitute external causes under the broad language of the Policies, for which resultant damage and loss is covered.

12. To make matters even worse, by refusing to reimburse USTC for losses arising from physical loss of and damage to product caused by water damage, humidity, moisture, flooding, and other similar perils, based on an argument that there is no "external cause," the Insurers are effectively arguing that the Policies only provide illusory coverage. In other words, by its terms and conditions, the Policies provide coverage to USTC for "***all*** risks of physical loss of or damage to" USTC's product resulting from "***any*** external cause," which includes humidity, water damage, moisture, flooding, and / or other similar perils. By now claiming—for the first time—that mold spores are inherent and natural in tobacco, and therefore damage caused by mold, humidity, water damage, moisture, flooding, and / or other similar perils is not covered under the broad language in the Policies, the Insurers are negating significant amounts of coverage under the Policies.

13. By failing to reimburse USTC for its losses, the Insurers have willfully acted in bad faith and employed unfair and deceptive practices and acts in violation of North Carolina law, including by misrepresenting the relevant facts giving rise to the loss; misrepresenting the coverages provided under the terms and conditions of the all-risk Policies they issued; not attempting to effectuate a prompt, fair, and equitable settlement of the claim even though their liability is clear; and forcing USTC to institute litigation to recover under the Policies by refusing to offer any amount of reimbursement for USTC's losses.

14. To date, USTC has suffered approximately $14 million in losses caused by the physical loss of and / or damage to its product. USTC has continued and will continue to incur additional losses as it works to, among other things, mitigate its losses, segregate the damaged product from the undamaged product, store damaged product in a separate storage facility, and salvage the product.

15. For all these reasons, USTC requests that the Court, among other things: (1) enter a declaratory judgment declaring that the Insurers are obligated to reimburse USTC for losses incurred as a result of the physical loss of and damage to its product; (2) find that the Insurers have breached their contractual duty to reimburse USTC for losses arising from all risks of physical loss of or damage to its product; (3) find that the Insurers have acted in bad faith toward USTC; and (4) find that the Insurers have engaged in unfair and deceptive practices and acts, in violation of North Carolina law.

## ALLEGATIONS
## PARTIES, JURISDICTION, AND VENUE

16. USTC is a corporation organized under the laws of North Carolina with its principal place of business located at 1304 Annapolis Drive Raleigh, North Carolina 27608.

17. Defendants Certain Underwriters at Lloyd's are Lloyd's Syndicate Nos. 1225, 3210, 4444, 2003, 4472, 4000, 2121, 5151, 1200, 1686, 0033, 1301, and 2001, and they have conducted insurance business through Managing Agents at Lloyd's, including by subscribing to Policy Numbers B1353DC1703690000 and B1353DC1602041000 ("Insurers"). The syndicates engage in the business of insurance under the names of: Associated Electric & Gas Insurance Services Ltd.; Mitsui Sumitomo Insurance Co. Ltd.; Canopius AG; XL Group Ltd.; Liberty Mutual Insurance Company; Argenta Holdings Ltd.; Sompo International Holdings Ltd.; Argo Group International Holdings Ltd.; AXIS Capital Holdings Ltd.; Hiscox Ltd.; StarStone Insurance Ltd.,

Hamilton Insurance Group Ltd.; MS Amlin PLC; and certain other persons or entities unknown to USTC.

18. Insurers have consented to jurisdiction in a court with competent jurisdiction in the United States and have authorized Mendes & Mount to accept service on their behalf at 750 Seventh Avenue, New York, New York 10019-6829. Specifically, the Policies reference certain other clauses ("Clauses"), including the Institute Service of Suit Clause (U.S.A), which provides: "It is agreed that in the event of the failure of the Underwriters severally subscribing this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America." These Clauses are attached as Exhibit A.

19. The Court has subject matter jurisdiction over this action pursuant to N.C.G.S. § 7A-240.

20. The Court has personal jurisdiction over the Insurers with respect to the claims set forth in this Complaint pursuant to N.C.G.S. § 1-75.4 because, among other things, the insurance contracts were delivered and to be performed upon in North Carolina, the insurers promised to insure USTC product in North Carolina, USTC was a resident of North Carolina when it suffered physical loss and / or damage to its product, USTC suffered physical loss and / or damage to its product in North Carolina, the Insurers' breach of the Policies has caused and continues to cause damage to USTC in North Carolina, and the Insurers solicit and sell insurance contracts and otherwise transact business in the State of North Carolina.

21. Venue is proper in this action under N.C.G.S. § 1-80 because USTC's principal place of business is located in Wake County, and it is where USTC's product suffered physical loss and / or damage.

# FACTUAL ALLEGATIONS

### A. USTC's Policies Provide Broad Coverage for All Risks of Physical Loss of and Damage to USTC's Tobacco Products.

22. Certain of the Insurers issued a Marine Stockthroughput Insurance Policy to USTC effective April 30, 2016 through April 30, 2017, with Policy Number B1353DC1602041000 ("2016-17 Policy"). The 2016-17 Policy is attached as Exhibit B.

23. The following syndicates subscribed to the 2016-17 Policy: Aegis (Lloyd's Syndicate 1225); Mitsui (Lloyd's Syndicate 3210), Canopius (Lloyd's Syndicate 4444), XL Catlin (Lloyd's Syndicate 2003), Liberty (Lloyd's Syndicate 4472), Pembroke (Lloyd's Syndicate 4000), Argenta (Lloyd's Syndicate 2121), Sompo (Lloyd's Syndicate 5151), Argo (Lloyd's Syndicate 1200), Axis (Lloyd's Syndicate 1686), Hiscox (Lloyd's Syndicate 0033), and StarStone (Lloyd's Syndicate 1301).

24. Certain of the Insurers issued a Marine Stockthroughput Insurance Policy to USTC effective April 30, 2017 through April 30, 2018, with Policy Number B1353DC1703690000, ("2017-18 Policy"). The 2017-18 Policy is attached as Exhibit C.

25. The following insurers subscribed to the 2017-18 Policy: Aegis (Lloyd's Syndicate 1225); MS Amlin (Lloyd's Syndicate 2001), Canopius (Lloyd's Syndicate 4444), XL Catlin (Lloyd's Syndicate 2003), Liberty (Lloyd's Syndicate 4472), Pembroke (Lloyd's Syndicate 4000), Argenta (Lloyd's Syndicate 2121), Sompo (Lloyd's Syndicate 5151), Argo (Lloyd's Syndicate 1200), Axis (Lloyd's Syndicate 1686), Hiscox (Lloyd's Syndicate 0033), and StarStone (Lloyd's Syndicate 1301).

26. Four syndicates have been principally involved in the handling of this claim: Aegis (Lloyd's Syndicate 1225); Mitsui (Lloyd's Syndicate 3210); Canopius (Lloyd's Syndicate 4444); and MS Amlin (Lloyd's syndicate 2001).

27. The terms and conditions in the 2016-17 Policy and 2017-18 Policy are substantially similar (collectively, the "Policies").

28. The Policies each provide $30,000,000 in broad coverage for "any one loss any one Location," with a $10,000 deductible. (2016-17 Policy, at 4 & 9 of 45; 2017-18 Policy, at 4 & 9 of 44).

29. The Policies define Location as "any building, tank, silo, dock, wharf, pier, bulkhead (or groups thereof) bounded on all sides by public streets or open waterways or open land space, each of which shall be not less than fifty feet wide . . . .unless equipped with fire wall and/or doors or other approved method whereby buildings and / or areas on either side are currently designated as separated fire areas by qualified and/or recognized fire surveyors . . . ." (2016-17 Policy, at 17 of 45; 2017-18 Policy, at 17 of 44).

30. The Policies insure "Goods and/or Merchandise of every description consisting principally of but not restricted to leaf tobacco, cigarettes, tax stamps, blending rag tobacco, tobacco seeds and fertilizer, and/or all other interests including raw materials and semi-finished goods handled by the Insured in the course of their business and/or in the care, custody and control of the Insured whether in transit (including domestic and internal transits) or store or elsewhere anywhere in the World . . . ." (2016-17 Policy, at 3 of 45; 2017-18 Policy, at 3 of 44).

31. The Policies apply to Goods and/or Merchandise "[a]t and from any Port or Ports, Place or Places in the World to any Port or Ports, Place or Places in the World, including domestic and/or internal transits and storage." (2016-17 Policy, at 3 of 45; 2017-18 Policy, at 3 of 44).

32. The Policies insure against several specifically named risks and "all other like perils, losses or misfortunates that have or shall have come to the hurt, detriment or damage of the said goods and merchandises." The Policies also specifically insure "[a]gainst all risks of physical

loss of or damage to the subject-matter insured from any external cause." (2016-17 Policy, at 5 of 45, 22 of 45; 2017-18 Policy, at 5 of 44, 22 of 44).

33. The phrase "any external cause" is not defined in the Policies.

34. The Policies do not contain any exclusions for damage or loss caused by mold, humidity, water damage, moisture, flooding, and / or other similar perils.

35. The Notice of Loss provision in the Policies provides "Loss or damage which may become a claim under this Insurance shall be advised to Insurers as soon as practicable after it becomes known to the Insurance Risk Manager. Failure of the Insured to report said loss or damage within a reasonable time shall not invalidate any claims under this insurance." (2016-17 Policy, at 18 of 45; 2017-18 Policy, at 18 of 44).

36. The General Contract Provisions similarly state, "The Insured shall not be prejudiced by any unintentional delay or omission in the reporting, where specified herein, of risks attaching hereto . . . if notice be given to the Slip Leader as soon as practicable after said facts become known to the Insured . . . ." (2016-17 Policy, at 26 of 45; 2017-18 Policy, at 26 of 44).

37. The Sue and Labour Clause reads, "It is agreed that in case of actual or imminent loss, damage, cost or expense, it shall be lawful and necessary for the[]Insured, their Factors and Assigns, to sue, labour and travel for, in and about the defence, safeguard and recovery of the interests insured hereunder, or any part thereof, or to incur such other expenses as are reasonable and/or necessary for the purpose of reducing or attempting to reduce any potential loss or liability under this Contract without prejudice to this insurance, and subject always to the terms, conditions, limitations and exclusions of this Insurance, the charges thereof shall be borne by the[]Insurers. It is further agreed that no acts of the Insurers or the Insured in recovering, saving or preserving the interests insured shall be considered as a waiver or acceptance of abandonment. The Insurers

9

hereon agree to pay the charges described above in addition to amounts otherwise recoverable hereunder, subject however to the applicable limits of this insurance as contained herein or endorsed hereto, which would operate so as to restrict the amount of such charges payable by the Insurers hereon." (2016-17 Policy, at 24 of 45; 2017-18 Policy, at 24 of 44).

      **B.    The Insurers Have Failed to Fulfill Their Policy Obligations in Bad Faith and Have Employed Unfair and Deceptive Practices and Acts In Refusing to Reimburse USTC for Losses it has Incurred Due to Physical Loss of and Damage to Its Product.**

38. During the relevant time period, USTC stored certain tobacco products in multiple buildings in Fuquay-Varina, North Carolina.

39. In October 2016, Hurricane Matthew struck North Carolina. Hurricane Matthew was a widespread and devastating event, resulting in flooding across North Carolina, including in Fuquay-Varina. This flooding breached certain buildings at USTC's Fuquay-Varina location, but it did not appear to reach the cartons of product stored in the warehouses because the cartons are all stored elevated off the floor on dunnage.

40. In early 2018, USTC decided to segregate certain product and move it to a third-party warehouse for business reasons. At that time, when moving inventory to a third-party warehouse, USTC discovered physical loss of and damage to tobacco product stored in the Fuquay-Varina buildings. More specifically, USTC stores its tobacco in rows of cartons, which are stacked upon each other. As USTC was moving its product, it discovered damage to the product stored on the bottom rows in multiple buildings, regardless of crop year and crop grade.

41. USTC gave timely notice of the loss to its Insurers under the Policies in April 2018.

42. The Insurers sent USTC two reservation of rights letters on September 7, 2018 and January 4, 2019, which are attached as Exhibits D and E, respectively. In the letters, the Insurers claim, among other things, that "the presence of mould spores on tobacco is a natural, inherent

quality associated with tobacco leaves. To date, however, no external cause for the mould growth has been presented to Insurers." (*See* Jan. 4, 2019 Letter at p. 2). However, in the very next sentence of their letter, the Insurers go on to state: "[B]ased on the investigation to date, it appears that seasonal temperature changes and ambient, atmospheric moisture levels has led to moisture migration from the cement floor of the warehouses to the bottom cartons." (*See* Jan. 4, 2019 Letter at p. 2). Moisture migration from the cement floor of the warehouses to the bottom cartons containing USTC's damaged product is an "external cause."

43. Since providing notice of the claim, USTC has cooperated with the Insurers and provided significant amounts of information, including by coordinating multiple site inspections, participating in multiple telephone conferences, corresponding via email, and providing product samples for testing.

44. On April 1, 2019, USTC responded to the Insurers' reservation of rights letters. The April 1, 2019 letter is attached as Exhibit F.

45. In its April 1, 2019 letter, USTC explained, among other things, that "The damaged product is clearly from an external cause of loss as evidenced by the only product Impacted was in the bottom row, bottom carton, all grades, with no discrimination for the year processed. . . . . We are not aware of any similar issue at any other tobacco warehouses. The fact is that moisture migrating from the cement floor to the bottom cartons is an 'external cause of loss'. . . ." (April 1, 2019 letter, at 2).

46. USTC has also provided multiple spreadsheets and other documentation demonstrating its losses, including documents reflecting its damaged inventory and warehouse related costs. USTC also provided moisture readings to the Insurers demonstrating that the damaged product complied with industry moisture standards when it was originally stored.

47. On May 9, 2019, the Insurers wrote another reservation of rights letter, again claiming that the information provided by USTC "does not demonstrate an external cause of the loss," based on arguments similar to those raised in the Insurers' previous reservation of rights letters. The May 9, 2019 letter is attached as Exhibit G.

48. The Insurers have refused to reimburse USTC for any of its losses.

49. The Insurers have not explained why mold, humidity, water damage, moisture, flooding, and / or other similar perils are not considered "external cause[s]" under the Policies.

50. In refusing to reimburse USTC for its losses—which constitute a valid claim under the Policies—the Insurers have acted in bad faith.

51. In refusing to reimburse USTC for its losses, the Insurers have misrepresented pertinent facts and insurance policy provisions relating to coverages at issue, including the Insurers' promise to provide all-risks coverage for losses arising out of any external cause, in violation of North Carolina law. *See, e.g.*, N.C.G.S. §§ 58-63-10, 58-63-15, 75-1.1.

52. Despite the fact that their liability is clear, the Insurers have not acted in good faith as they have failed to "effectuate a prompt, fair and equitable settlements of claims" in further violation of North Carolina law. *See, e.g., id.*

53. The Insurers have also compelled USTC to institute litigation to recover amounts due under the Policies by refusing to offer any reimbursement to USTC for the losses it has incurred as a result of physical loss of and damage to its product, also in violation of North Carolina law. *See, e.g., id.*

54. The Insurers' have employed bad faith and unfair and deceptive practices and acts willfully, wantonly, and intentionally.

55. Despite Insurers' bad faith and unfair and deceptive practices and acts, USTC has worked to mitigate its damages by segregating the damaged product and by retaining a salvage company which has provided a higher salvage value than that obtained by the Insurers. More specifically, even though the Insurers retained a U.K.-based salvage company that secured bids for approximately $1.4 million, USTC retained a separate salvage company that was able to secure bids for approximately $4.5 million, thereby significantly mitigating its losses even further.

56. To date, USTC has suffered approximately $14 million in losses arising from physical loss and damage to its product caused by mold, humidity, water damage, moisture, flooding, and / or other similar perils. USTC will continue to incur additional losses as it works to mitigate its losses by, among other things, segregating the damaged product from the unaffected product, storing the damaged product in a separate warehouse, and engaging with a salvage company. USTC will also incur further unnecessary expenses including attorneys' fees and other costs associated with the pursuit of this action due to the Insurers' bad faith refusal to honor the promises they made in their Policies in return for valuable premiums.

## CAUSES OF ACTION
## COUNT I
### (Request for Declaratory Judgment)

57. USTC realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 56 above.

58. An actual controversy has arisen between USTC and the Insurers concerning the rights and obligations of the parties under the express terms of the Policies.

59. The parties specifically dispute whether the Insurers are obligated to reimburse USTC for the losses it has incurred as a result of physical loss and damage to its product caused by mold, humidity, water damage, moisture, flooding, and / or other similar perils.

60. This dispute is properly addressed in a declaratory judgment action because a declaratory judgment will serve the useful purpose of clarifying and settling the legal relations at issue.

61. A declaratory judgment is also proper because it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to this proceeding.

62. A judicial declaration is necessary and appropriate so that the parties to this action may ascertain their rights and duties under the Polices.

63. Under the Policies, the Insurers agreed to reimburse USTC for losses arising from "all risks of physical loss of or damage to the subject-matter insured from any external cause."

64. USTC has suffered physical loss of and damage to its tobacco product as a result of mold, humidity, water damage, moisture, flooding, and / or other similar perils.

65. Accordingly, USTC seeks a declaration from this Court that, under the Policies, the Insurers are obligated to reimburse USTC for the losses it has incurred from physical loss of and damage to its product caused by mold, humidity, water damage, moisture, flooding, and / or other similar perils.

66. The Court's ruling on these issues will clarify and settle the legal relations at issue, and it will terminate and afford relief from the uncertainty, insecurity, and controversy as to all interested parties.

67. A judicial determination is necessary and appropriate, so the parties may ascertain their respective rights and duties as to one another and may conduct themselves accordingly now and in the future.

## COUNT II

### (Breach of Contractual Duty to Reimburse USTC for Losses Arising From Physical Loss of and Damage to USTC's Product)

68. USTC realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 67 above.

69. The Policies are valid and enforceable contracts between USTC and the Insurers.

70. USTC has performed under the terms of the Policies.

71. Under the Policies, the Insurers agreed to pay USTC for "all risks of physical loss of or damage to the subject-matter insured from any external cause."

72. USTC has suffered physical loss of and damage to its tobacco product as a result of an external cause—namely, mold, humidity, water damage, moisture, flooding, and / or other similar perils.

73. By refusing to reimburse USTC, the Insurers are in breach of their obligations under the Policies.

74. As a result of the Insurers' breach, USTC has suffered millions of dollars in damages, as well as damages resulting from the Insurers' improper withholding of insurance benefits that are due and owing under their Policies, and attorneys' fees in this action.

## COUNT III

### (Bad Faith)

75. USTC realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 74 above.

76. The Insurers initially recognized that USTC's claim fell squarely within the scope of the all-risk Policies they issued. For example, the Insurers stated that, "based on the investigation to date, it appears that seasonal temperature changes and ambient, atmospheric moisture levels has led to moisture migration from the cement floor of the warehouses to the bottom cartons." In doing so, the Insurers admitted that an external cause—moisture migration

from the cement floor of the warehouse—caused physical loss and damage to USTC's product. The Insurers also solicited bids from a salvage company to reduce losses arising from USTC's lost / damaged product, which they would not have done if USTC's loss was excluded under their Policies.

77. Despite USTC's valid claim, the Insurers have, in bad faith, refused to reimburse USTC, claiming that there is no external cause and that mold spores are inherent in the tobacco product. In doing so, the Insurers have willfully engaged in outrageous and aggravating conduct. By way of example only:

   a. Insurers' argument that there is no external cause for the damaged product directly contradicts their finding that moisture migration from the cement floor led to the loss or damage;

   b. Insurers retained a salvage company to inspect and salvage USTC's damaged product while simultaneously claiming that there was no external cause for the damaged product; and

   c. Insurers have not explained why moisture, humidity, water damage, flooding, or other similar perils do not constitute an external cause under their Policies.

78. Insurers' bad faith refusal to reimburse USTC constitutes, among other things, willful and / or wanton conduct, as the Insurers have demonstrated a conscious and / or intentional disregard of and indifference to the rights of USTC. Insurers know that this type of conduct has and will continue to harm, injure, and damage USTC.

79. Further, Insurers' refusal to resolve this matter is unwarranted.

80. As a result of the Insurers' bad faith, USTC has suffered and will continue to suffer damages, including incurring attorneys' fees, in this action, as well as the full amount of losses USTC suffers arising from or relating to the physical loss of and damage to its product.

81. USTC is entitled to damages as a result of Insurers' bad faith in an amount to be proven at trial, including any special, punitive, treble, consequential, exemplary or other damages available as a result of Insurers' bad faith, as well as its attorneys' fees and litigation costs.

## COUNT IV

### (Violation of N.C.G.S. §§ 58-63-10, 58-63-15, 75-1.1 - Unfair and Deceptive Practices and Acts)

82. USTC realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 81 above.

83. Under the Policies, the Insurers agreed to pay USTC for "all risks of physical loss of or damage to the subject-matter insured from any external cause."

84. USTC has suffered physical loss of and damage to its tobacco product as a result of an external cause—namely, mold, humidity, water damage, moisture, flooding, and / or other similar perils.

85. The Insurers have refused to reimburse USTC for any of its losses arising from the physical loss of and damage to its product and in doing so, they have willfully engaged in unfair or deceptive acts or practices, including but not limited to:

   a. Mispresenting pertinent facts and provisions of the Policies relating to coverages at issue;

   b. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which their liability has become clear; and

    c. Compelling USTC to institute litigation to recover amounts due under the Policies by not offering any reimbursement to USTC.

*See* N.C.G.S. § 58-63-15(11).

86. Insurers' unfair and deceptive practices and acts constitute, among other things, unethical, willful and / or wanton conduct, as the Insurers have demonstrated a conscious and / or intentional disregard of and indifference to the rights of USTC. Insurers know that this type of conduct has and will continue to harm, injure, and damage USTC.

87. Further, Insurers' refusal to resolve this matter is unwarranted.

88. By providing insurance, and by engaging in unfair and deceptive practices and acts in breaching their obligations under the Policies, the Insurers have affected commerce.

89. The Insurers' unfair and deceptive practices and acts have proximately caused injury to USTC.

90. As a result of the Insurers' unfair and deceptive practices and acts, USTC has suffered and will continue to suffer damages, including incurring attorneys' fees in this action, as well as the full amount of losses USTC suffers arising from or relating to the physical loss of and damage to its product.

91. By providing insurance, and by engaging in unfair or deceptive practices in breaching its obligations under their Policies, the Insurers have violated North Carolina law prohibiting unfair and deceptive practices and acts, including N.C.G.S. §§ 58-63-10, 58-63-15, 75-1.1.

92. USTC is entitled to damages as a result of Insurers' unfair and deceptive acts and practices in an amount to be proven at trial, including any special, punitive, treble, consequential,

exemplary or other damages available as a result of Insurers' unfair and deceptive acts and practices, as well as its attorneys' fees and litigation costs.

## PRAYER FOR RELIEF

WHEREFORE, USTC requests a trial by jury and that the Court enter judgment in its favor, as follows:

(1) Declaring that under the Policies, the Insurers are obligated to reimburse USTC for losses arising from the physical loss of and damage to its product arising from mold, humidity, water damage, moisture, flooding, and / or other similar perils;

(2) Finding that the Insurers have breached their contractual obligations by refusing to reimburse USTC for losses arising from physical loss of and damage to USTC's product;

(3) Finding that the Insurers have repudiated their coverage obligations and refused to fulfill their coverage obligations to USTC in bad faith;

(4) Finding that the Insurers have employed unfair and deceptive practices and acts, in violation of North Carolina law;

(5) Awarding USTC the damages it has incurred or will incur, which exceed twenty-five thousand dollars ($25,000);

(6) Awarding USTC its attorneys' fees and litigation costs;

(7) Awarding USTC any special, punitive, treble, exemplary, consequential, or other damages available to USTC as a result of the Insurers' willful bad faith and unfair and deceptive practices and acts; and

(8) Awarding USTC such other and further different relief that this Court deems just and proper.

Dated: August 16, 2019.

Respectfully submitted,

*/s/ Cory Hohnbaum*

KING & SPALDING

Cory Hohnbaum
N.C. Bar No.: 17453
chohnbaum@kslaw.com
300 S. Tryon Street
Suite 1700
Charlotte, NC 28202
(704) 503-2600
(704) 503-2622 (Fax)

Meghan H. Magruder*
Shelby S. Guilbert, Jr.*
Amy E. Dehnel*
mmagruder@kslaw.com
sguilbert@kslaw.com
adehnel@kslaw.com
1180 Peachtree Street, NE
Atlanta, GA 30309
(404) 572-4600

*Attorneys for Plaintiff U.S. Tobacco Cooperative Inc.*

* *Pro Hac Vice motions forthcoming*