IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-00430-BO

| | |
|---|---|
| U.S. Tobacco Cooperative Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | **U.S. TOBACCO COOPERATIVE INC.'S** |
| v. ) | **MEMORANDUM OF LAW IN** |
| ) | **SUPPORT OF ITS MOTION FOR** |
| Certain Underwriters at Lloyd's subscribing to ) | **PARTIAL SUMMARY JUDGMENT** |
| Policy Numbers B1353DC1703690000 and ) | |
| B1353DC1602041000, ) | |
| ) | |
| Defendants. ) | |

In accordance with Rule 56(a) of the Federal Rules of Civil Procedure and Rule 56(a) of the Local Rules of this Court, U.S. Tobacco Cooperative Inc. ("USTC") hereby files its Memorandum of Law in Support of Its Motion for Partial Summary Judgment, stating as follows:

## I. INTRODUCTION AND NATURE OF THE CASE

This is an insurance coverage dispute arising out of the failure of Certain Underwriters at Lloyd's ("Insurers") to honor their policy obligations for over $10 million in losses that USTC sustained after water—in the wake of Hurricane Matthew—ruined tobacco product stored in USTC's Fuquay-Varina, North Carolina warehouse ("Damaged Product").

The Insurers sold USTC all-risk Marine Stockthroughput Insurance Policies ("Policies") that provide broad coverage for ███████████████████████████ ███████████ subject to various exclusions. (USTC's Statement of Undisputed Material Facts in Support of Its Motion for Partial Summary Judgment, filed contemporaneously herewith ("SUMF"), Nos. 1-3). Following USTC's notice of these losses, the Insurers and their inspectors

repeatedly acknowledged ▌ (SUMF Nos. 5-26), which are ▌ under the Policies. The Insurers also acknowledged that ▌

▌ (SUMF Nos. 14-16). Nevertheless, for the past almost-two years, the Insurers have refused to indemnify USTC for any of its losses, leaving USTC with no option but to file this action.

In their Answer, the Insurers claim that water damage to the Damaged Product is not an "external cause," and that any ensuing mold damage that happened after USTC's product got wet did not result from an external cause because mold is an inherent characteristic of tobacco. (*See* Answer to Complaint ("Answer"), Doc. 9, Ninth and Tenth Affirmative Defenses, ¶¶ 102-103). Because these arguments are inconsistent with admissions the Insurers and their representatives made before USTC filed this action, USTC sent the Insurers Requests for Admissions on December 13, 2019 ("Requests for Admission"), asking the Insurers to admit, among other things, that (1) USTC's tobacco product suffered physical loss or damage (SUMF No. 42(b)); (2) moisture, water damage, flooding, heavy rainfall, humidity, and a hurricane are all "external causes" as that term is used in the Policies (SUMF Nos. 42(d)-(i)); (3) "tobacco does not inherently grow mold unless and until it is exposed to moisture" (SUMF No. 42(v)); and (4) there are no exclusions in the Policies for mold, an external cause, inherent qualities or vices of tobacco, hurricanes, flooding, moisture, water damage, or humidity. (SUMF Nos. 42(m)-(u)). The Insurers' responses to these Requests for Admission were due on January 15, 2020, but the Insurers did not serve responses on that date, and they failed to request an extension of the deadline. (SUMF

2

Nos. 32-41). As explained in more detail below, under the Federal Rules of Civil Procedure and well-established law throughout the country and in North Carolina, because the Insurers failed to timely serve responses to USTC's Requests for Admission, all of the Requests for Admission are automatically deemed admitted.

The undisputed record, therefore, establishes that (1) the Ninth and Tenth Affirmative Defenses in the Insurers' Answer should be dismissed, because they are based on Insurers' claims that there was no "external cause" that affected the Damaged Product; and (2) the Insurers will not be able to point to any evidence at trial under which they can succeed in defending against USTC's claims for declaratory judgment (Count I) and breach of contract (Count II). Consequently, and for the reasons set forth in more detail below, USTC requests that the Court enter summary judgment on the Ninth and Tenth Affirmative Defenses in the Insurers' Answer and Counts I and II of USTC's Complaint.

## II.     SUMMARY OF RELEVANT UNDISPUTED FACTS

USTC "is a grower-owned marketing cooperative based in Raleigh, North Carolina," which produces some of the "finest, most compliant and most sustainable flue-cured tobacco in the world," grown by over 700-member growers throughout the Southeast. (*See About Us*, US TOBACCO COOPERATIVE, https://www.usleaf.com/about/, attached as Ex. A). USTC stores some of its tobacco product in a storage location located in Fuquay-Varina, North Carolina.

In April 2018, USTC reported a claim for losses ("Claim") to its Insurers under its Policies after it discovered that some of the tobacco product stored in its Fuquay-Varina, North Carolina warehouse had suffered mold damage caused by water damage and/or moisture ("Damaged Product"). (SUMF Nos. 5-6). The Policies under which USTC reported its Claim for Damaged Product broadly provide coverage for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SUMF No. 3). The Insurers have acknowledged that this tobacco product is ▮▮▮▮▮▮▮▮▮▮ under the Policies. (SUMF No. 6).

Following USTC's notice of the Claim, the Insurers and their inspectors acknowledged that USTC's tobacco ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SUMF Nos. 8-13). They have also acknowledged that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SUMF Nos. 7-16). The Insurers have also repeatedly acknowledged that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SUMF Nos. 1-4). Further, the Insurers and their representatives have been involved in the salvage of USTC's Damaged Product, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SUMF Nos. 27-31). Despite these acknowledgements, however, the Insurers have refused to reimburse USTC for losses it has incurred because of the Damaged Product. (SUMF No. 26).

The Insurers base their refusal on unsupported arguments ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SUMF Nos. 17-26; Doc. 9, Ninth and Tenth Affirmative Defenses, ¶¶ 102-103). Although USTC has explained to Insurers that these arguments are meritless, the Insurers have remained entrenched in their bad-faith refusal to reimburse USTC, even though they have failed to point to any relevant factual or legal support for their arguments.

To make matters even worse, after serial delays throughout USTC's course of dealing with the Insurers, now that USTC has filed litigation to try to obtain the insurance proceeds it is rightfully owed, and for which it paid valuable premiums, the Insurers have repeatedly failed to adhere to deadlines established by the Federal Rules of Civil Procedure, the Local Rules, and the

4

Orders of this Court. The following timeline, while not comprehensive, highlights some of the Insurers' repeated delays:

- USTC filed its Complaint on August 16, 2019. (*See* Doc. 1). After USTC gave the Insurers multiple extensions for filing their Answer, the parties agreed that the Insurers would file their Answer on December 6, 2019. (*See* Dec. 10, 2019 email from M. Magruder, attached as Ex. B). The Insurers failed to file their Answer on the agreed-upon deadline without any explanation, and instead answered the Complaint four days late, on December 10, 2019. (*Id.*; Doc. 9).

- The Insurers' Financial Disclosures were due on September 27, 2019, but the Insurers did not file them until October 30, 2019, after two separate Notices of Deficiency from the Court. (Sept. 30, 2019 Doc. Text Entry; Oct. 25, 2019 Doc. Text Entry; Doc. 7; Local Rule 7.3(d)).

- On November 4, 2019, USTC participated in a Rule 26(f) conference with the Insurers' New York-based counsel. (Doc. 8, at 1). The parties came to an agreement regarding certain deadlines in the case as memorialized in the Report of the Parties' Planning Meeting filed on November 20, 2019. (*See* Doc. 8). On December 12, 2019, the Court entered the operative Scheduling Order ("Scheduling Order") which contained deadlines agreed upon by the parties. (Doc. 10). Despite the parties' agreement on deadlines, the Insurers have missed numerous other discovery deadlines.

- For example, while the Insurers served their Initial Disclosures on December 13, 2019 per the Scheduling Order, the Insurers' Initial Disclosures were exceedingly deficient. Accordingly, on December 31, 2019, USTC sent the Insurers a deficiency letter regarding

5

- their Initial Disclosures. (SUMF No. 37). The Insurers have yet to supplement their Initial Disclosures.

- On December 13, 2019, USTC served discovery on the Insurers, including the Requests for Admission, Plaintiff's First Set of Interrogatories to Defendants ("Interrogatories"), and Plaintiff's First Set of Requests for Production to Defendants ("Requests for Production") (collectively, "Discovery Requests"). (SUMF No. 32).

- Insurers' responses to USTC's Discovery Requests were due on January 15, 2020. (SUMF Nos. 33-36). USTC reminded Insurers of this deadline in its December 31, 2019 letter. (SUMF Nos. 37-38). The Insurers did not seek an extension for their discovery responses. (SUMF No. 39).

- USTC's counsel did not receive Insurers' responses to USTC's Requests for Admission and Requests for Production until January 22, 2020. (SUMF No. 40). Both sets of responses were dated January 16, 2020 (one day after the deadline), but were not accompanied by a certificate of service. (SUMF No. 41).

- Further, despite multiple reminders from USTC, the Insurers failed to respond to USTC's Interrogatories, which were due on January 15, 2020. (SUMF No. 44). As of the date of this filing, the Insurers have still not responded to USTC's Interrogatories, and their responses are now over two months past due. (*Id.*).

- The minimal discovery responses and document production produced by the Insurers also present numerous deficiencies. Additionally, the parties have had multiple other conversations during which Insurers stated they would serve additional discovery

responses, documents, and other relevant papers, by certain dates. These additional deadlines also have been missed.

- With respect to USTC's Requests for Admission, the Insurers failed to answer the following requests before the deadline:

    1. Admit that the Policies provide insurance coverage for "all risks of physical loss of or damage to the subject-matter insured from any external cause."

    2. Admit that some of USTC's tobacco product stored at the Fuquay Storage Location (i.e. the Damaged Product) suffered physical loss or damage.

    3. Admit that the tobacco product in the Fuquay Storage Location constitutes "subject-matter insured" under the Policies.

    4. Admit that moisture is an "external cause" as that term is used in the Polic[i]es.

    5. Admit that water damage is an "external cause" as that term is used in the Polic[i]es.

    6. Admit that flooding is an "external cause" as that term is used in the Polic[i]es.

    7. Admit that heavy rainfall is an "external cause" as that term is used in the Polic[i]es.

    8. Admit that humidity is an "external cause" as that term is used in the Polic[i]es.

    9. Admit that a hurricane is an "external cause" as that term is used in the Polic[i]es.

    10. Admit that Hurricane Matthew affected the Fuquay-Varina, North Carolina area on or about October 8, 2016.

    11. Admit that flooding occurred in Fuquay-Varina, North Carolina in connection with Hurricane Matthew.

12. Admit that heavy rainfall occurred in Fuquay-Varina, North Carolina in connection with Hurricane Matthew.

13. Admit that there is no exclusion in the Policies for mold.

14. Admit that there is no exclusion in the Policies for an external cause.

15. Admit that there is no exclusion in the Policies for inherent qualities of tobacco.

16. Admit that there is no exclusion in the Policies for inherent vices of tobacco.

17. Admit that there are no exclusions in the Policies for hurricanes.

18. Admit that there are no exclusions in the Policies for flooding.

19. Admit that there are no exclusions in the Policies for moisture.

20. Admit that there are no exclusions in the Policies for water damage

21. Admit that there are no exclusions in the Policies for humidity.

22. Admit that tobacco does not inherently grow mold unless and until it is exposed to moisture.

23. Admit that USTC has incurred losses as a result of its Damaged Product.

(SUMF Nos. 42(a)-(w)).

Because the Insurers failed to timely answer USTC's Requests for Admission, the above statements are deemed admitted. *See* Fed. R. Civ. P. 36(a)(3).

### III. ARGUMENT AND CITATIONS OF AUTHORITY

**A. The Matters in USTC's Requests for Admissions Are Deemed Admitted Because, for Purposes of Rule 56, the Insurers Failed to Timely Serve Responses.**

Rule 36 of the Federal Rules of Civil Procedure provides:

A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

8

Fed. R. Civ. P. (36)(a)(3). Rule 36 further provides, "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). "The Fourth Circuit has long held that unanswered requests for admissions are deemed admitted." *Ferrellgas, L.P. v. Best Choice Prods.*, No. 1:16CV259, 2017 WL 3142044, at *3 (M.D.N.C. July 24, 2017) (citing *Batson v. Porter*, 154 F.2d 566, 568 (4th Cir. 1946)) (finding that the party who had failed to timely respond to requests for admissions also failed to establish that any resulting admissions should be withdrawn).

As further explained by a district court in California,

> Rule 36(a) provides that the "matter is deemed admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party. . . ." "***Failure to respond to requests for admission results in automatic admission of the matters requested . . . No motion to establish the admissions is needed because Federal Rule of Civil Procedure 36(a) is self-executing.***"

*Smith v. Pac. Bell Tel. Co.*, 662 F. Supp. 2d 1199, 1229 (E.D. Cal. 2009) (alternations in original) (emphasis added).

Moreover, "'[a] Rule 36 admission, even one obtained by the failure to timely respond to the request, can form the basis for summary judgment.'" *USRP (Gant 1), LLC v. Langston*, No. 4:04-CV-143-D, 2006 WL 4681143, at *2 (E.D.N.C. Mar. 13, 2006) (citation omitted). Judge Flanagan of this Court has further explained that,

> "***A party's failure to respond to a request for admissions under Federal Rule of Civil Procedure 36 may result in a material fact being deemed admitted and subject the party to an adverse grant of summary judgment.***" Nevertheless, some courts have been reluctant to award summary judgment on the basis of a pro se party's default on requests for admissions on the grounds that such a party may not have understood the effect of failure to respond to the requests. However, under the circumstances presented in this case, the court concludes that it is appropriate

9

to deem the unanswered requests admitted for the purpose of the motion for summary judgment.

*United States v. Renfrow*, 612 F. Supp. 2d 677, 682 (E.D.N.C. 2009) (emphasis added) (citations omitted); *see also Burwick v. Pilkerton*, 700 F. App'x 214, 216 (4th Cir. 2017) (upholding a grant of summary judgment for defendant and stating, "The fact remains, however, that [plaintiff] failed to timely respond to [defendant's] requests for admissions and that, by operation of Fed. R. Civ. P. 36, [plaintiff] has admitted that she ignored [defendant's] commands to show her hands and crawled away from [defendant] and the police dog"). In *Burwick v. Pilkerton*, the Fourth Circuit found that matters in the relevant requests for admission (which plaintiff failed to timely answer) were deemed admitted even though they contradicted the plaintiff's interrogatory responses. *Id.* at 217. The Fourth Circuit further found that these admissions supported summary judgment—even despite plaintiff's contradictory interrogatory responses—because "any disputes of material facts in this case arise from [plaintiff's] own inconsistent statements and are therefore insufficient to survive Defendants' summary judgment motion." *Id.*

Similarly, in *United States v. $2,564.00 in U.S. Currency*, No. 5:09-CV-15-F, 2010 WL 374775, at *2 (E.D.N.C. Feb. 2, 2010), *aff'd sub nom. United States v. Lagunas-Ocampo*, 393 F. App'x 85 (4th Cir. 2010), Senior District Judge Fox of this Court found that a party had failed to timely respond to requests for admission, and that those admissions were, therefore, deemed admitted. *Id.* at *2. Because the party who had failed to respond had also "not filed a motion to withdraw or amend these admissions," the Court further found that it could "treat the admissions as conclusively established for the purposes of [a] . . . Motion for Summary Judgment." *Id.*

USTC served its first Requests for Admission on Insurers on December 13, 2019. (SUMF No. 32). Pursuant to the terms of the Federal Rules of Civil Procedure, the Scheduling Order, the

Parties' Rule 26(f) Report, and the Requests for Admission, Insurers' responses were due on January 15, 2020. (SUMF Nos. 33-38). The Insurers did not seek an extension and did not serve responses to the Requests for Admission on January 15, 2020. (SUMF Nos. 39-41). The matters in the Requests for Admission are, therefore, deemed admitted under Rule 36 of the Federal Rules of Civil Procedure and the above-cited caselaw applying that Rule.[1] Beyond that, the Insurers have not filed any motion seeking to withdraw or amend the admissions, despite their awareness that their responses were served well after the deadline. The admissions are conclusively established for purposes of supporting this Motion for Partial Summary Judgment. *See* Fed. R. Civ. P. 36(b); *$2,564.00 in U.S. Currency*, 2010 WL 374775, at *2.

As a result, Insurers have conclusively admitted that some of USTC's tobacco product stored in Fuquay-Varina, North Carolina suffered physical loss or damage and that USTC incurred losses as a result of this Damaged Product. (SUMF Nos. 42(b), (w)). They have admitted that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (SUMF Nos. 5-26). The Insurers have also admitted that moisture, water damage, flooding, heavy rainfall, humidity, and a hurricane are all "external causes" as that term is used in the Policies, and that "tobacco does not inherently grow mold unless and until it is exposed to moisture." (SUMF Nos. 42(d)-(i), (v)). The Insurers further admitted that there are no exclusions in the Policies for mold, an external cause, inherent qualities of tobacco, inherent vices of tobacco, hurricanes, flooding, moisture, water damage, or humidity. (SUMF Nos. 42(m)-(u)). Moreover, these admissions do not merely

---

[1] Indeed, counsel for USTC did not receive the responses to the Requests for Admissions and the Requests for Production until January 22, 2020. (SUMF No. 40). Both sets of responses were dated January 16, 2020 (which was still after the deadline), but neither included a certificate of service. (SUMF No. 41). Courts have held that when discovery responses do not include a certificate of service it is "impossible to know the exact date of service." *Livesay v. Carolina First Bank*, No. 1:06CV45, 2006 WL 8455976, at *1 (W.D.N.C. Dec. 20, 2006).

11

represent a technical rule violation, because they are consistent with Insurers' and their representatives' other admissions in the record, including the Insurers' investigator's recommendation that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*See, e.g.*, SUMF Nos. 5-16).

### B.  USTC Is Entitled to Partial Summary Judgment on the Insurers' Ninth and Tenth Affirmative Defenses.

As the Fourth Circuit has explained,

> Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party discharges its burden by showing there is an absence of evidence to support the nonmoving party's case, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial.

*Thomas v. Nationwide Mut. Ins. Co.*, 47 F. App'x 255 (4th Cir. 2002) (citations omitted). "[T]o withstand a summary judgment motion, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial." *Fleming v. Bos. Sci. Corp.*, 627 F. App'x 231, 232 (4th Cir. 2015). "Summary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." *Thomas*, 47 F. App'x at 255. "Where 'the nonmoving party has failed to make a sufficient showing on an essential element of [its] case, with respect to which [it] has the burden of proof,' the moving party is entitled to summary judgment." *B & J Enters., Ltd. v. Giordano*, 329 F. App'x 411, 416 (4th Cir. 2009) (alterations in original).

In their Ninth and Tenth affirmative defenses, the Insurers claimed, respectively, that, "To the extent that the alleged losses asserted in the Complaint were caused by inherent vice, Insurers have no liability to Plaintiff" and "Plaintiff bears the burden of and has not established that the alleged losses asserted in the Complaint resulted from an external cause or fortuitous event and,

12

therefore, Insurers have no liability to Plaintiff." (Doc. 9, ¶¶ 102, 103). Because the matters in the Requests for Admission are deemed admitted as set forth above, there is no evidence the Insurers can point to at trial to establish these affirmative defenses. USTC is therefore entitled to partial summary judgment on the Ninth and Tenth Affirmative Defenses, and they should be dismissed.

C. **USTC Is Entitled to Partial Summary Judgment on Counts I and II of Its Complaint.**

In Count I, USTC seeks, among other things, a declaration from the Court "that, under the Policies, the Insurers are obligated to reimburse USTC for the losses it has incurred from physical loss of and damage to its product caused by mold, humidity, water damage, moisture, flooding, and / or other similar perils." (Complaint, ¶ 65). In Count II, USTC seeks damages arising from the Insurers' breach of their obligations under the Policies. (*Id.*, ¶¶ 68-74). "Under North Carolina law, to succeed on a breach of contract claim, a plaintiff must demonstrate the '(1) existence of a valid contract and (2) breach of the terms of that contract.'" *Johnson v. Colonial Life & Acc. Ins. Co.*, 173 N.C. App. 365, 369, 618 S.E.2d 867, 870 (2005) (citation omitted). The undisputed record, together with the Insurers' admissions, show that (i) the Policies are valid contracts between USTC and the Insurers, (ii) the Policies provide coverage for losses USTC incurred in connection with its Damaged Product, and (iii) the Insurers breached their obligations under the Policies. USTC is therefore entitled to partial summary judgment on Counts I and II of the Complaint.

    1. **There is No Dispute that the Policies are Valid Contracts Between the Insurers and USTC.**

The Insurers have admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (SUMF Nos. 1-4; Doc. 9, ¶ 3). There is, thus, no dispute that a valid contract exists between USTC and the Insurers. Consequently, USTC satisfies the first element of its breach of contract claim.

### 2. The Undisputed Facts Demonstrate that the Insurers Have an Obligation to Reimburse USTC for Its Losses Arising from the Damaged Product.

There is no dispute that USTC is entitled to coverage under the Policies for its losses incurred in connection with the Damaged Product. First, as the Insurers have admitted, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (SUMF Nos. 3-4). It is undisputed that USTC reported its Claim in April 2018. (SUMF No. 5). Specifically, USTC reported a claim for losses arising from ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ certain of its tobacco product stored in its Fuquay-Varina, North Carolina storage location. (SUMF Nos. 5-16). Insurers have admitted that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (SUMF No. 6).

The Insurers have also admitted that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (SUMF Nos. 7-25). The Insurers have further admitted that moisture, water damage, flooding, heavy rainfall, humidity, and a hurricane are all "external causes" as that term is used in the Policies, and that mold does not inherently grow on tobacco unless and until that tobacco is exposed to moisture. (SUMF Nos. 42(d)-(i), (v)). Finally, the Insurers have admitted that there are no exclusions in the Policies for mold, an external cause, inherent qualities of tobacco, inherent vices of tobacco, hurricanes, flooding, moisture, water damage, or humidity. (SUMF Nos. 42(m)-(u)).

In sum, the following facts are undisputed: (1) the Policies provide broad coverage for damage to USTC's tobacco product ▮▮▮▮▮▮▮▮▮▮ (2) USTC's tobacco product suffered ▮▮▮▮▮▮▮▮▮▮ and USTC incurred losses as a result of this damage; (3) moisture and water damage are external causes as that term is used in the Policies; (4) tobacco does not inherently grow mold unless and until it is exposed to moisture; and (5) there are no exclusions barring coverage for moisture, mold or water damage. Therefore, it is undisputed that, under the Policies, the Insurers owe USTC coverage for losses USTC has incurred in connection with its Damaged Product.

### 3. The Undisputed Facts Demonstrate that the Insurers Have Breached Their Obligations Under the Policies.

Despite the fact that USTC's Claim is clearly covered under the Policies, the Insurers have not reimbursed USTC for any of the losses suffered as a result of its Damaged Product. (SUMF No. 26). The undisputed facts therefore demonstrate that the Insurers are in breach of their contractual obligations under the Policies. Because there is no set of facts under which Insurers could prove otherwise at trial, USTC is entitled to summary judgment on its claims for breach of contract and declaratory judgment.

## IV. CONCLUSION

WHEREFORE for all these reasons USTC requests that this Court enter summary judgment in its favor on the Ninth and Tenth Affirmative Defenses in the Insurers' Answer and USTC's Request for Declaratory Judgment (Count I) and breach of contract claim (Count II).

Date: April 3, 2020.

                                 */s/ Cory Hohnbaum*
                                 Cory Hohnbaum
                                 KING & SPALDING LLP

300 S. Tryon Street
Suite 1700
Charlotte, NC 28202
(704) 503-2600
Fax: (704) 503-2622
chohnbaum@kslaw.com
N.C. Bar No.: 17453
Local Civil Rule 83.1(d) Counsel for *Plaintiff*
*U.S. Tobacco Cooperative Inc.*

Meghan H. Magruder*
Shelby S. Guilbert, Jr.*
Amy E. Dehnel*
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
mmagruder@kslaw.com
sguilbert@kslaw.com
adehnel@kslaw.com
(404) 572-4600

*Attorneys for Plaintiff U.S. Tobacco Cooperative Inc.*

*\* Notices of Special Appearance forthcoming*

16

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-00430-BO

| | |
|---|---|
| U.S. Tobacco Cooperative Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | **CERTIFICATE OF SERVICE** |
| v. ) | |
| ) | |
| Certain Underwriters at Lloyd's subscribing to ) | |
| Policy Numbers B1353DC1703690000 and ) | |
| B1353DC1602041000, ) | |
| ) | |
| Defendants. ) | |

    I hereby certify that on April 3, 2020, I electronically filed the foregoing **U.S. TOBACCO COOPERATIVE INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF System which automatically sends e-mail notification of such filing to the attorneys of record.

                                                                    */s/ Cory Hohnbaum*