# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION
# 5:19-cv-430

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
U.S. TOBACCO COOPERATIVE, INC., :
                                  :
      Plaintiff,            :
                                  : **DEFENDANTS' OPPOSITION**
v.                                     : **TO PLAINTIFF'S MOTION**
                                  : <u>**TO COMPEL**</u>
CERTAIN UNDERWRITERS AT LLOYD'S :
SUBSCRIBING TO POLICY NUMBERS :
B1353DC1703690000 and :
B1353DC1602041000, :
                                  :
     Defendants.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## PRELIMINARY STATEMENT

Plaintiff U.S. Tobacco Cooperative, Inc. ("Plaintiff" or "USTC") attempts to paint a dire picture of Defendants Certain Underwriters at Lloyd's Subscribing to Policy Numbers B1353DC1703690000 and B1353DC1602041000, ("Underwriters" or "Defendants") in this matter. To the contrary, Defendants have solid factual and legal grounds for their positions and respectfully submit that USTC's motion to compel should be denied.

## FACTUAL BACKGROUND

This case involves an insurance dispute regarding a claim for damage to tobacco. It is not disputed that Defendants, Certain Underwriters at Lloyd's, issued Marine Stock throughput Insurance Policy B1353DC1602041000 to USTC for the policy period of 30 April 2016 to 20 April 2017 (the "2016-2017 Policy") and policy number B1353DC1703690000 with a policy period of 30 April 2017 to 30 April 2018 (the "2017-2018 Policy" together with the 2016-2017 Policy, the "Policies").

1

In April 2018, USTC reported a claim for alleged damage to some of its tobacco product stored in certain warehouses located in Fuquay-Varina, North Carolina. SOMF ¶5. After the claim was reported, the tobacco product was inspected on a number of occasions and documentation and information was provided by USTC as part of the claims process. Based on the information and documentation presented by USTC, Insurers issued several reservations of rights, including those dated September 7, 2018 and January 4, 2029. On August 16, 2019, USTC filed suit in the Wake County Superior Court. Insurers timely removed the action to this Court on September 27, 2019. Although USTC's counsel makes much of the timing of the filing of Defendants' Answer and Disclosure, from the time of removal until the filing of the Answer, further discussions and a meeting regarding the matter occurred.

On December 13, 2019, USTC's counsel served via email a First Set of Requests for Admissions ("RFA"), a First Set of Request for Production ("RFP") and a First Set of Interrogatories. The Parties also exchanged Rule 26 Disclosures. Defendants do not dispute that responses to the foregoing requests were due 33 days after service, or January 15, 2020. However, due to a clerical error, the response date was logged as January 16, 2020. *See* Affirmation of James A. Saville, Jr. dated April 30, 2020, ¶2 (hereinafter "Saville Aff."). As a result, Defendants' Response to USTC's RFA and RFP were served via U.S. Mail on January 16, 2020. *See* Saville Aff. ¶3, Ex. A.[1] According to USTC's counsel they were not received until January 22, 2020, a date we have no reason to question.

---

[1] To alleviate any concern that the affidavit of service was not prepared on January 16, 2020, we have provided a screenshot of the Firm's internal system that shows that affidavit of service and the Responses to the RFA and RFP were generated on January 16, 2020. *See* Saville Aff. ¶4, Ex. B.

2

Following a meet and confer regarding Defendants' Response to the RFP and the objections asserted therein, on February 10, 2020, defense counsel set out its position with respect to certain requests. *See* Saville Aff. ¶7. Despite defense counsel's detailed explanation for the position taken, no response was received from USTC's counsel. *Id.* Shortly, thereafter, on February 14, 2020, Defendants produced nearly 1,400 pages of responsive documents and hundreds more on April 28. *Id.* A privilege log was provided on May 1, 2020. *Id.* Certified responses to Interrogatories will be produced promptly.

## ARGUMENT

### A. Insurers Objections are Not Waived and their Rule 26 Disclosures are Sufficient

USTC argues that a one-day, excusable delay in the service of responses to USTC's RFA and RFP dictates that privilege is waived in connection with documents.[2] However, as noted above the one-day delay in service was an excusable error and a harsh finding that objections and privilege are waived is not warranted. Further, a privilege log has been produced and Interrogatory responses will be provided promptly.

Additionally, USTC argues that Defendants' Rule 26 disclosures were inadequate and should be supplemented. To the contrary, however, Defendants' Rule 26 disclosures were sufficient as they identified, in relevant part, witnesses with knowledge and indicated that documents would be produced. *See* Saville Aff. ¶5, Ex. C. Since service of Defendants' Rule 26 disclosures, over 2,000 pages of documents have been produced so to suggest that Defendant Rule 26 disclosures were insufficient in the first instance or should be supplemented is not well based and USTC's motion in that regard should be denied.

---

[2] With respect to the RFA, USTC's argument and Defendants' Response thereto are set forth in their respective memorandum of law in connection USTC's motion for partial summary judgment.

### B. Loss Reserve Information Relating to the Claim Is Protected by the Work Product Doctrine and Attorney-Client Privilege.

USTC is not entitled to information relating to loss reserves because it is protected by the work product doctrine. Work product "forbids the discovery of documents and other tangible things that are 'prepared in anticipation of litigation' unless the party has a substantial need for those materials and cannot 'without undue hardship . . . obtain the substantial equivalent of the materials by other means.'" *Long v. Joyner*, 155 N.C.App. 129, 136 (2002); *National Union Fire Ins. v. Murray Sheet Metal*, 967 F.2d 980 (4th Cir. 1992). *Compare* Fed. R. Civ. P. 26(b)(3)(A) *with* N.C. Gen. Stat. § 1A-1, Rule 26(b)(3) (2005). The Fourth Circuit has made it clear that "[t]he document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Murray Sheet Metal Co.*, 967 F.2d at 984. (emphasis in original). North Carolina courts have determined that an event could reasonably result in litigation when an insurer "reasonably anticipated litigation prior to the denial of a claim." *Evans v. United Services Auto. Ass'n.*, 142 N.C.App. 18 (2001). Work-product attaches "not only [to] materials prepared after the party has secured an attorney, but those prepared under the circumstances in which a reasonable person might anticipate a possibility of litigation." *Wills v. Duke Power Co.*, 291 N.C. 19, 35 (1976).

In the context of first party coverage disputes, courts have found that discovery of an insurer's loss/expense reserves to be irrelevant. This is for good reason. "Because of the business risk and regulatory compliance considerations involved in setting loss reserves, loss reserves information are not synonymous with, and may not be particularly probative of, an Insurer's opinion on the true value of a particular claim or on coverage." *Cummins Inc. v. Ace American Ins. Co.*, 2011 WL 130158, *12 (S.D. Ind. Jan. 14, 2011). Similarly, as one court noted, ". . . reserves

4

generally reflect only precautionary estimates used for business-risk purposes and not an insurer's opinion about the merits of the claim." *Compton v. Allstate Prop. & Cas. Ins. Co.,* 278 F.R.D. 193, 197 (S.D. Ind. 2011).

The documents sought by USTC in RFP numbers 19 and 25 fall squarely within work product doctrine's protections and are not discoverable. The loss reserves requested here were established or adjusted in consultation with outside counsel in anticipation of or within the course of litigation. However, consultation of counsel is not a prerequisite to invoking the work product doctrine. Indeed, federal courts within and without the Fourth Circuit have determined that opinions and legal input of an attorney receives even greater protection. *See e.g. Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 332 (N.D.W. Va. 2006). "Where reserves have been established by legal input, the results and supporting papers will most likely be work-product and may also reflect attorney client privileged communications." *Meighan v. TransGuard Ins. Co. of America, Inc.* 298 F.R.D. 436, 444 (N.D. Iowa 2014) quoting *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, No. 1:03CV 1322, 2006 WL 355289 at *2 (N.D. Ohio Feb. 15, 2006).

Additionally, the Insurers in the present case consulted with counsel in order to set and establish a reserve which falls within attorney-client privilege. North Carolina has adopted a five-part test to determine if communications are privileged. (1) the attorney client relationship must exist at the time the communication is made; (2) the communication is made in confidence; (3) the communication relates to the matter for which the attorney is consulted; (4) the communication is made in the course of giving or seeking legal advice for a proper purpose; and (5) the client has not waived the privilege. *See In re Death of Miller*, 357 N.C. 316, 335-36 (2003).

Here, it is clear that the Insurers have satisfied the *Miller* test. The Insurers retained counsel for the purposes of setting a reserve and issuing a coverage opinion. The confidential

5

communications sought by USTC were made for the purpose of determining potential liability, the advice was given for a proper purpose, and the privilege was not waived. Accordingly, the requested information is not subject to discovery.

### C. <u>Information Relating to Insurers' Reinsurance is Irrelevant and/or Privileged.</u>

USTC also seeks to compel production of information relating to Insurers' reinsurance. Such information is not discoverable because it is irrelevant, subject to attorney-client privilege, and/or the work product doctrine.

Reinsurance is a mechanism by which an insurer can spread loss incurred from an insured risk. As several federal courts have stated, "obtaining reinsurance coverage is a decision based on business considerations and not questions of policy interpretation and therefore, its relevance is very tenuous." *Zurich Am. Ins. Co. v. Keating Building Corp.* 2006 WL 8457156, at *3 (D. N.J. Dec. 29, 2006) (internal quotations omitted). "Any information regarding reinsurance would at best be evidence of undisclosed unilateral intention, which would not be material to the interpretation of the insurance contract at issue." *Occidental Chemical Corp. v. Hartford Accident & Indemnity Co.*, Index No. 41009/8D (N.Y. Sup. Ct. Dec. 4, 1990). USTC has wholly failed to demonstrate the relevance of reinsurance information to its bad faith claim, and cannot show that it would be relevant to declaratory judgment.

Further, the reinsurance information requested by USTC is protected by work product and/or attorney-client privilege. USTC relies upon *Nat'l Union Fire Ins. Co. v. Stauffer Chem. Co.* to support its position that reinsurance-related information "may elucidate the nature and extent of Insurer's investigation, Insurers' assessments regarding their potential exposure, and any reinsurers' independent assessments of liability." (Pl.'s Mot. to Compel at 3); 558 A.2d 1091 (Sup. Ct. Del. 1989). There however, the Superior Court of Delaware forbade the insured from obtaining

6

communications subject to attorney-client privilege and allowed the insurers to withhold all materials prepared in anticipation of litigation. 558 A.2d at 1096-97.

The Insurers and reinsurer are entitled to assert privilege over communications and documents because they have a common interest. The common interest doctrine preserves attorney-client and work product protections when there is dual representation of the parties or a joint defense or strategy, but separate representation. *See e.g. Am. Re-Ins. Co. v. U.S. Fidelity & Guaranty Co.*, 837 N.Y.S. 616 (1st Dept. 2007). The reinsurer and cedent maintain a relationship of utmost good faith and are required to disclose all material facts affecting risk. *See e.g. Christiana General Ins. Corp. of New York v. Great Am. Ins. Co.*, 979 F.2d 268, 278 (2d Cir. 1992). Thorough and confidential disclosure would be inhibited if reinsurance documents and communications were subjected to scrutiny by policyholders. *Keating Building Corp.*, 2006 WL 8457156, at *5. Accordingly, disclosure of work product or privileged communications is precluded where they "intended and expected that their communications would remain confidential and protected from common adversaries." *See Id.* quoting *Minnesota School Boards Ass'n Ins. Trust v. Employers Ins. Co. of Wausau*, 183 F.R.D. 627, 631-632 (N.D. Ill.1999). *See also Great Am. Surplus Lines, Inc. v. Alice Oil Co.*, 120 F.R.D. 533 (E.D. Cal. 1988) (holding disclosure of documents did not waive privilege because reinsurer had a financial interest in the outcome of the litigation).

Just as the work product and attorney-client protections preclude disclosure in an insured/insurer context, the common interest doctrine extends them to the cedent/reinsurer relationship in the present case. Accordingly, any privileged information related to reinsurance is not subject to disclosure.

**D. USTC's Request for Information on Similar Claims Exceeds the Scope of Discovery**

7

Case 5:19-cv-00430-BO    Document 34    Filed 05/01/20    Page 7 of 11

The information that USTC seeks with regard to information on other claims is disproportionate to the action that it has filed. Federal Rule of Civil Procedure Rule 26(b)(1) limits the scope of discovery to:

> . . . any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). USTC's request for all documents and communications related to mold damage is overly broad as it encompasses mold growth for any product, not just tobacco, at any point in time, under any circumstance, i.e., storage or transit, arising under any type of policy worldwide. Clearly, the burden placed on Insurers is enormous and contradicts the purpose of the Rule. Compliance with such a request would require searching thousands of claims files and the potentially the production of potentially thousands of claim files. This request is not proportional to the needs of the needs of this case, nor would any potential benefit outweigh the burden of producing the vast quantity of irrelevant information. *See e.g. Leski, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 106 (D. N.J. 1989) (holding the production of all similar claim files would be unduly burdensome and disproportionate to the litigation). Further, the documentation submitted by other Insureds is privileged and confidential as it requests claims information and insurance policies involving insureds other than USTC. USTC's request is beyond the scope of the discovery rules.

As set forth herein, USTC has overstated its objections and position and Insurers Rule 26 Disclosures and production of documents to date has been sufficient and their objections well grounded. Accordingly, USTC's request for discovery sanctions should be denied.

## **CONCLUSION**

For the reasons set forth herein, Defendants respectfully submit that USTC's motion to compel must be denied.

Dated: Wilmington, North Carolina
       May 1, 2020

                            CLARK, NEWTON & EVANS, PA

                            By: /s/ Seth P. Buskirk
                                NC BAR 36664
                                509 Princess Street
                                Wilmington, NC 28401
                                Tel: (910) 762-8743
                                Fax: (910) 762-6206
                                spb@clarknewton.com
                                Local Civil Rule 83.1(d) Counsel for Defendants

                                HILL RIVKINS LLP
                                Attorneys for Defendants

                            By: /s/ James A. Saville, Jr.
                                James A. Saville, Jr.*
                                45 Broadway - Suite 1500
                                New York, New York 10006
                                Tel: (212) 669-0600
                                Fax: (2120669-0698
                                jsaville@hillrivkins.com
                                *Notice of Special Appearance Forthcoming

TO:

Cory Hohnbaum
KING & SPALDING LLP
300 S. Tryon Street
Suite 1700
Charlotte, NC 28202
(704) 503-2600
Fax: (704) 503-2622

9

chohnbaum@kslaw.com
N.C. Bar No.: 17453
Local Civil Rule 83.1(d) Counsel for *Plaintiff U.S. Tobacco Cooperative Inc.*

Meghan H. Magruder*
Shelby S. Guilbert, Jr.*
Amy E. Dehnel*
KING & SPALDING LLP
1180 Peachtree Street, NE Atlanta, GA 30309
mmagruder@kslaw.com
sguilbert@kslaw.com
adehnel@kslaw.com
(404) 572-4600

*Attorneys for Plaintiff U.S. Tobacco Cooperative Inc.*
*Notice of Special Appearance Forthcoming

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
U.S. TOBACCO COOPERATIVE, INC.,             :
                                            :
            Plaintiff,                      :
                                            :
v.                                          : CERTIFICATE OF SERVICE
                                            :
CERTAIN UNDERWRITERS AT LLOYD'S             :
SUBSCRIBING TO POLICY NUMBERS               :
B1353DC1703690000 and                       :
B1353DC1602041000,                          :
                                            :
            Defendants.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
```

I hereby certify that on May 1, 2020, I electronically filed the foregoing **Defendant's Opposition to Plaintiff's Motion to Compel** with the Clerk of Court using the CM/ECF System which automatically sends e-mail notification of such filing to the attorneys of record.


Dated: Wilmington, North Carolina
       May 1, 2020

/s/ Seth P. Buskirk