IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-00430-BO

| | |
|---|---|
| **U.S. Tobacco Cooperative, Inc.**, | |
| Plaintiff, | |
| v. | **Order** |
| **Certain Underwriters at Lloyd's Subscribing to Policy Numbers B1353DC1703690000 and B1353DC1602041000,** | |
| Defendants. | |

If someone unfamiliar with federal litigation were to review the Defendant Insurers' conduct here, they would be left with the distinct impression that compliance with the Federal Rules was optional. Or, at best, they would conclude that there was no penalty for disregarding them.

But that is not the case. The Federal Rules are mandatory and they require parties to make a good-faith effort to comply with them. They also empower courts to sanction parties or attorneys who flout the rules and unduly delay the discovery process.

For more than a year, the Insurers have continuously violated the Federal Rules. They have largely ignored their obligation to participate in the discovery process. And in many cases they have refused to participate at all. On top of that, when they did participate, their responses were largely inadequate.

Plaintiff U.S. Tobacco Cooperative has asked the court, for the second time, to force the Insurers to respond. Having reviewed the parties' submissions, the court will do so.

The court will also hold a hearing to consider whether an award of fees and costs or other sanctions may be appropriate to address the conduct of the Insurers and their counsel.

## I.      Background

USTC is a North Carolina-based grower-owned tobacco marketing cooperative, involving over 700 growers throughout the Southeast. Compl. ¶ 2, D.E. 1-1. It maintains 13 locations around the United States, including one in Fuquay-Varina, North Carolina. *Id.*

The Cooperative also maintains insurance on the various products it handles. Comp. ¶ 3–5. This insurance is provided by 13 distinct Lloyd's Syndicates[1] (collectively, the Insurers) that have subscribed to USTC's policies. *Id.* ¶ 17.

In October 2016, Hurricane Matthew caused flooding throughout North Carolina, including at USTC's Fuquay-Varina location. *Id.* ¶ 6. The Cooperative eventually learned that tobacco products stored in that facility suffered damage from several causes, including mold, humidity, and water. *Id.* ¶¶ 6–7.

After learning about the damage, USTC notified the Insurers of its loss. *Id.* ¶ 8. But the Insurers "refused to reimburse USTC for its losses[.]" *Id.* ¶ 10. They claim that "'mould [sic] spores [are] natural and inherent to tobacco,' and thus there is no coverage under the Policies[.]" *Id.*

Litigation ensued. In August 2019, USTC sued the Insurers in North Carolina Superior Court.[2] *Id.* at 1. Its complaint included claims of breach of contract, bad faith, and unfair and deceptive trade practices. *Id. passim*. It seeks a declaration that the policies cover the losses and

---

[1] A leading treatise describes this arrangement: "The basic characteristic of Lloyds insurers is that they are individual insurers rather than corporate insurers. Lloyds as such neither subscribes to policies of insurance nor directly issues them. Rather, insurance is written by individual 'underwriting members' who sign 'each for himself and not for another.'" Steven Plitt, et al., 3 *Couch on Insurance* § 39:47 Character of Lloyds Associations (3d ed. 2020).

[2] USTC filed this case in North Carolina Superior Court. But the insurers removed it to this court through diversity jurisdiction. D.E. 1.

an award of damages, among other things. *Id.* at 19. The Insurers removed the case to this court. Notice of Removal, D.E. 1. But from then on out, there have been delays, issues, and complications at almost every step along the way.

### A.    Pre-Discovery Matters

This court's local rules impose several requirements on parties who choose to remove a case from federal court. When the Insurers filed their notice of removal, they needed to file "the notice that the party filed in state court to comply with 28 U.S.C. § 1446(d)" within 7 days after removal. Local Civil R. 5.3(a)(2). But they didn't.[3]

That wasn't the Insurers' only Local Rules violation. They were also required to file financial disclosures required by the court's local rules within 14 days after removal. Local Civil R. 5.3(d); 7.3. But they didn't.[4]

Removal also triggers certain deadlines under the Federal Rules. After removing the case, the Insurers had to file their answer no later than 7 days later.[5] But they didn't.

Instead, Insurers received permission from USTC to file their answer no later than December 6, 2019. Email from Magruder to Saville (Dec. 10, 2019 10:39 a.m.), D.E. 29-1. But despite a reminder from USTC three days before the deadline, Email from Magruder to Saville (Dec. 3, 2019 3:24 p.m.), D.E. 29-2, they didn't.

---

[3] The Insurers eventually filed the notice about three months after removing the case.  D.E. 15

[4] The insurers waited just over a month after removal to file their financial disclosure forms.  D.E. 7.

[5] There are three events that can trigger a deadline to answer after removal under the Federal Rules.  A party who removes a case before filing an answer must do so by the later of 21 days after receiving the complaint, 21 days after being served with a summons, or 7 days after filing the notice of removal.  Fed. R. Civ. P. 81(c)(2). The Insurers received a copy of the complaint on August 28, 2019, and removed the case on September 27, 2019.  Notice of Removal at 4 & ¶ 11.  And it appears that USTC never served the summons based on an agreement between the parties.  Email from Magruder to Saville (Dec. 10, 2019 10:39 a.m.), D.E. 29-1. So the only deadline available to the Insurers was the seven-day period after filing the notice of removal.

3

On December 8, 2019, three days after their answer was due, the Insurers said they would file it that day. Email from Saville to Magruder (Dec. 9, 2019 10:25 a.m.), D.E. 29-3. But they didn't. *See* D.E. 9.

The Insurers ended up filing their answer on December 10, 2019. *Id.*

### B.    Initial Disclosures

The case eventually entered its discovery phase. Among the first tasks in the discovery process is for the parties to draft and serve the initial disclosures required by Rule 26(a)(1)(A). The initial disclosures are supposed to include four categories of information. First, the name and contact information for individuals known to a party who are "likely to have discoverable information[.]" Fed. R. Civ. P. 26(a)(1)(A)(i). Second, either a copy of documents that it may use to support its claims and defenses or a description of those documents. *Id.* 26(a)(1)(A)(ii). Third, a computation of the damages a party seeks and any supporting documents. *Id.* 26(a)(1)(A)(iii). And fourth, "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." *Id.* 26(a)(1)(A)(iv).

The Insurers served their initial disclosures in mid-December 2019. Initial Disclosures at 3, D.E. 29-4. USTC believed the Insurers' disclosures were inadequate and sent them a letter at the end of the month explaining why. Letter from Guilbert to Saville (Dec. 31, 2019), D.E. 29-5.

Among the Cooperative's issues with the Insurer's disclosure was their failure to identify documents that they may use to support their claims and defenses. *Id.* at 1. In their disclosure, the Insurers did not identify any documents. Initial Disclosures at 2. Instead they said that their "efforts to identify, review[,] and/or obtain relevant documentation is ongoing." *Id.* at 4. But they did generally refer to "claims files that may have relevant documentation and information[.]" *Id.*

USTC also claimed that the Insurers did not identify reinsurance agreements that might satisfy all or a part of the judgment. Dec. 31, 2019 Guilbert Letter at 2. The Insurers' disclosures only referred the Cooperative "to Policy Numbers B1353DC1703690000 and B1353DC1602041000[,]" Initial Disclosures at 3, which are the policies at issue in the Complaint, Compl. ¶ 3, D.E. 1-1.

The letter led to two meet and confer calls, one in late January 2020 and one in early February 2020. Email from Magruder to Saville (Jan 23, 2020 2:23 p.m.), D.E. 29-6; Email from Dehnel to Saville (Feb. 6, 2020 12:59 p.m.), D.E. 29-8. During the January call, Insurers committed to supplement their disclosures and produce the required documents by the end of the month. Jan. 23, 2020 Dehnel Email. But they didn't. Email from Magruder to Saville (Feb. 3, 2020 3:36 p.m.).

During the next call, which occurred on February 5, 2020, the Insurers once again committed to supplementing their disclosures and said they would do so within two days. Email from Dehnel to Saville (Feb. 6, 2020 12:59 p.m.). But they didn't. Mem. in Supp. of First Mot. at 3, D.E. 29-7.

USTC brought up the Insurers' inadequate initial disclosures in its First Motion to Compel. Mem. in Supp. First Motion at 6–7. The Insurers responded by arguing that responses were sufficient since they "identified, in relevant part, witnesses with knowledge and indicated that documents would be produced." Resp. to First Mot. at 3, D.E. 34. Plus, they noted that they had produced "over 2,000" pages of documents since they served their initial disclosures. *Id.*

The dispute over the initial disclosures continues to this day. Mem. in Supp. Second Mot. at 10, D.E. 68.

## C.    Written Discovery

USTC also served written discovery by email on December 13, 2019. Email from Dehnel to Defense Counsel (Dec. 13, 2019 7:12 p.m.), D.E. 29-9. This discovery included interrogatories and requests for production. *Id.* According to USTC, the Insurers had until January 15, 2020 to respond to all the outstanding discovery.[6] *Id.* But they didn't.

### 1.    Interrogatories

The mid-January 2020 deadline came and went without the Insurers serving responses to the Cooperative's interrogatories. Dehnel Dec. ¶ 7, D.E. 24-3. It was not until June 2020 when one Insurer (Aegis) served an unverified response. Mem. in Supp. Second Mot. at 5; Resp. in Opp. Mot. Prot. Order, Ex. E, D.E. 52-5.

And as late as March 2021, 12 of the 13 Insurers have still not responded. Supp. Reply to Second Mot. at 1, D.E. 75. This is despite USTC raising concerns about the interrogatories (among other things) on at least 10 separate occasions.[7]

The Cooperative's entreaties repeatedly garnered illusory assurances of coming compliance from the Insurers. For example, during a meet and confer call in late January 2020, the Insurers committed to serve their responses by the end of the month. Jan. 23, 2020 Magruder Email. But they didn't.

---

[6] The Cooperative served its discovery on the Insurers by email under an agreement between the parties. Email from Saville to Dehnel (Dec. 13, 2019 9:55 a.m.), D.E. 29-13. Generally, discovery responses are due 30 days after service. *See* Fed. R. Civ. P. 33(b)(2); 34(b)(2)(A); 36(a)(3). The Federal Rules add three days to this period if service occurs in certain ways. *Id.* 6(d). But agreed upon service by email does not appear to be one of the methods entitled to this extension. *Compare* Rule 6(d) (extending the service deadline for service under Rules 5(b)(2)(C), (D), or (F)) *with* Rule 5(b)(2)(E) (authorizing service by "other electronic means that the person consented to in writing"). Under this view of the Rules, the responses would have been due on January 13, 2020. But since the Cooperative argues that the responses were due on a later date, the court will accept that for purposes of this motion.

[7] Discussions about the interrogatories occurred on January 21, 2020 (D.E. 29-16 at 2); January 22, 2020 (D.E. 29-6); February 3, 2020 (D.E. 29-7); February 5, 2020 (D.E. 29-8); September 3, 2020 (D.E. 68-5); September 20, 2020 (D.E. 68-6 at 2); November 25, 2020 (D.E. 84-1 at 2); December 29, 2020 (D.E. 89-2 at 3); January 5, 2021 (D.E.89-2 at 2); and January 12, 2021 (D.E. 84-2 at 2).

Then, during the February 2020 meet and confer call, the Insurers once again committed to responding to the interrogatories. But, once again, they didn't.

In April 2020, USTC filed its First Motion to Compel that addressed, among other things, the Insurers' failure to respond to the interrogatories. Mem. in Supp. First Mot. at 6. In its May 2020 response, the Insurers assured the court that "Certified responses to Interrogatories will be produced promptly." Resp. to First Mot. at 3, D.E. 34. But they weren't.

Fast forward to early September 2020. The parties once again held a meet and confer call to discuss discovery issues. Email from Dehnel to Saville & Guilbert (Sept. 4, 2020 2:07 p.m.), D.E. 68-5. The Insurers committed to providing "revised and verified Interrogatory Responses for Aegis" along with "complete and verified" responses for three other insurers by September 11, 2020. *Id.* But they didn't.

Later that month, counsel spoke again, and the Insurers said they were "working on finalizing all outstanding interrogatory responses this week." Email from Dehnel to Saville & Karn (Sept. 23, 2020 10:59 a.m.), D.E. 68-5. The Cooperative said it needed "verified, complete interrogatory responses by the end of the week." *Id.* But it didn't get them.

During October 2020, USTC filed its Second Motion to Compel. As with their First Motion, they raised the issues of the missing and inadequate interrogatory responses. Mem. in Supp. Second Mot. at 4. In their response, the Insurers told the court that "Interrogatory responses have been served and are undergoing amendment to the extent required," Resp. to Second Mot. at 7, D.E. 69. But the Insurers (other than Aegis) didn't respond and Aegis didn't amend its responses.

While the motion was pending, the parties' conversations about discovery issues continued. In late November 2020, Insurers acknowledged their need to respond and said they would provide

a date to serve completed, verified responses by early December 2020. Email from Dehnel to Saville (Nov. 25, 2020 1:07 p.m.), D.E. 84-1.

And they did. Supp. Reply to Second Mot. at 1, D.E. 84. The Insurers "promised" that they would serve "interrogatory responses for all of the insurers" by December 11. Email from Dehnel to Karn (Dec. 29, 2020 1:18 p.m.), D.E. 84-2 at 3. But they didn't serve the responses. Email from Dehel to Karn (Jan. 5, 2021 10:35 a.m.), D.E. 84-2 at 2.

As this discussion was ongoing, the court held a hearing on USTC's Second Motion to Compel. At the December 2020 hearing, counsel for the Insurers discussed the Interrogatory responses. He said, "We've agreed that we'll amend them based on all the discovery that's there to date. We'll get the certified answers." Hr. Tr. at 6:7–8. But they didn't amend them and, other than Aegis, they haven't provided certified (or verified) answers.

This issue persists well into 2021. As of early March, Aegis remains the only Insurer to respond and that Insurer has never amended its responses. Reply to Second Mot. at 3.

### 2. Requests for Production of Documents

Similar issues arose with the responses to USTC's request for production. As noted above, the Insurers should have served their responses on or before January 15, 2020. But they didn't.

Instead, USTC did not receive the responses until a week after they were due.[8] And when USTC reviewed the responses, it found that only 4 of the 13 Insurers bothered to respond. Ex. E to Mem. in Supp. Second Mot., 68-19 at 2. On top of that, the responses were unaccompanied by any documents. Email from Dehnel to Saville (Feb. 6, 2020 12:59 p.m.) (discussing when Insurers would "produce their first documents"), D.E. 29-8.

---

[8] The Insurers claim that they served the documents a day late. Saville Dec. ¶¶ 2, 3, 4. And they blame the untimely service on a clerical error that led to a mis-calendaring of the deadline. *Id.*

During a meet and confer call, the Insurers committed to start to producing documents on February 6, 2020, and completing their production a week later. Email Dehnel to Saville (Feb. 6, 2020 12:59 p.m.), D.E. 29-8. But they didn't begin or complete production during that period.

Instead, service began on February 14, 2020. Email from Saville to Dehnel (Feb. 14, 2020 11:35 a.m.), D.E. 29-18. This production contained around 1,400 pages of documents. Rep. to First Mot. at 3. The Insurers produced portions of their claims files a few days later. *See* Email from Saville to Dehnel (Feb. 19, 2020 10:46 a.m.), D.E. 29-19. After this initial tranche, the Insurers produced additional documents in late April 2020 and a privilege log at the start of May. Saville Aff. ¶ 6.

Besides the timing issues, USTC also had substantive problems with the Insurers' responses. It argued that they improperly withheld documents on loss reserve information, reinsurance agreements, and claims like USTC's. Mem. in Supp. First Mot. at 8–10. The Insurers maintained that the documents the Cooperative was after were irrelevant or, in some cases, privileged. Resp. to First Mot. at 4–7. They also asserted that the request for documents about similar claims was overbroad. *Id.* at 7–8.

As the First Motion to Compel was pending, the Cooperative deposed representatives for some Insurers. The deponents' testimony showed deficiencies in the Insurers' efforts to search for and produce documents.

For example, one request asked for documents related to, among other things, underwriting of USTC's policies. *See* Request for Production 5, D.E. 29-11 at 9. But the representative for Mitsui admitted that it had not produced relevant documents about the underwriting of USTC's policy, had not confirmed whether handwritten notes related to underwriting existed, and had not confirmed whether there were emails related to the underwriting. Smith Dep. 71:19–73:15, D.E.

68-3. The representative for MS Amlin, another Insurer, gave similar testimony. *See* Holmes Dep. 85:6–12, D.E. 68-2.

Other shortcomings in the Insurers' searches and production are described in Exhibit E to the Second Motion to Compel. With few exceptions, the Insurers have not addressed these criticisms.

### 3. Privilege Logs

When the Cooperative received the Insurers' responses in late January 2020, it noticed that the responses contained attorney-client privilege and work-product objections. But, according to the Cooperative, the Insurers neglected to say whether they were withholding any documents based on those objections. And it was unhappy with the Insurers' late production of what it believed were inadequate and incomplete privilege logs.

USTC raised its concerns with the Insurers, who pledged to produce a log by mid-February 2020. Email Dehnel to Saville (Feb. 6, 2020 at 12:59 p.m.), D.E. 29-8. But they didn't.

Instead, it took them until May 2020, and the filing of the first motion to compel, for them to produce a privilege log. Resp. to First Mot. to Compel. at 3, D.E. 34.

USTC remained unsatisfied. The Cooperative claimed that the logs were incomplete and made facially inappropriate claims of privilege. Mem. in Supp. Second Mot. at 3, 8.

It asked the Insurers to address these issues or at least discuss them. Email from Guilbert to Saville (Sept. 3, 2020 at 1:37 p.m.) at 2–3, D.E. 68-5. But they didn't—at least not until USTC filed its Second Motion to Compel.

The Insurers' response to that motion claimed they produced a supplemental privilege log "contemporaneously with the filing of" their response. Resp. to Second Mot. at 4. They claimed that "[a]t this juncture, the privilege logs are a nonissue." *Id.* But the logs were still an issue.

10

Contrary to what the Insurers told the court, USTC claims that there was no log served along with the Insurers' response. Reply to Second Mot. at 1–2; Ex. A to Reply at 2, D.E. 76-1. Instead, the Insurers served one privilege log the day after their response and two other privilege logs a week later. Reply to Second Mot. at 1–2; Ex. A to Reply at 2, D.E. 76-1. And, according to USTC, the logs did not apply to all the Insurers and did not cure the faults addressed in its motion. D.E. 75 at 2.

Discussions about the logs continued. The parties had three meet and confer conferences about the privilege logs in November and December 2020. Email from Dehnel to Saville (Nov. 25, 2020 1:07 p.m.), D.E. 84-1; Email from Dehnel to Saville (Dec. 3, 2020 5:03 p.m.), D.E. 84-3. USTC contends that Defendants were unprepared to address most of the issues it raised.

It was not until the day before the evidentiary hearing on this matter that Insurers served amended privilege logs on USTC. Supp. Reply to Second Mot. at 2. But according to USTC, these too are inadequate. *Id.* Subsequent attempts by USTC to get answers have been met with silence. *Id.*

### D. Heard Documents

One specific set of allegedly withheld documents deserve individualized attention. And those are documents created by Stephanie Heard, Ph.D., a consultant at CWA International. Heard was hired to investigate the cause and origin of the damage to the tobacco.

USTC wants the Insurers to turn over Dr. Heard's report and related documents (collectively, the Heard Documents). It argues that her documents are critical to this case since the Insurers' coverage defense hinges on the mold damage not being caused by an "external cause." Mem. in Supp. Second Mot. at 3.

The Insurers claim that these documents are attorney-client communications and thus they need not produce them. They say that they retained counsel to "receive legal advice with regard to the claim." Resp. in Opp. Second Mot. at 4. And they also retained Dr. Heard to "conduct an investigation into the cause and origin of the tobacco damage." *Id.* Heard's "investigation was used to inform defense counsel's legal opinion proffered to the underwriters." *Id.* They claim that this establishes that the privilege applies and they assert there has been no waiver. *Id.*

In response, the Cooperative says that the Insurers have not backed up their assertions on this point with any evidence. Reply to Second Mot. at 4–6, D.E. 75. And, in fact, they claim that deposition testimony undermines the Insurers' position because they originally retained defense counsel "for the purpose of analyzing coverage, preparing reservation of rights letters, and conducting the claims investigation." *Id.* at 5. They also argue that the Heard Documents are largely unprivileged, either because they do not satisfy the requirements to be privileged or there has been a waiver. *Id.* at 6.

### E.  Designating a Corporate Representative for Mitsui

There have also been issues identifying a corporate representative for Mitsui, one of the Insurers. Compl. ¶ 17. USTC first requested deposition dates for Mitsui's corporate representative in April 2020. Email from Guilbert to Saville (Sept. 3, 2020 1:37 p.m.), D.E. 68-5. Over the summer, the Insurers agreed to provide dates. *Id.* But they didn't. *Id.*

During a meet and confer call in early September 2020, the Insurers committed to providing deposition dates for Mitsui within 3 days. Email from Dehnel to Seville (Sept. 4, 2020 at 2:07 pm.), D.E. 68-5 at 5. But they didn't. Mem. in Supp. Second Mot. at 5, D.E. 68.

In response, the Insurers claim that they had already "produced two corporate representatives on behalf of Mistui." Resp. to Second Mot. at 6, D.E. 69. These two witnesses, the

Insurers claimed, provided testimony on the claims and underwriting topics in the Rule 30(b)(6) notice. *Id.*

But correspondence between the parties shows that the Insurers had not designated these individuals to testify for Mitsui. Instead, the Insurers designated them to testify on behalf of another Insurer and the Insurers now wanted their testimony to apply to Mitsui as well. Email from Dehnel to Saville (Nov. 25, 2020 at 1:07 p.m.), D.E. 84-2. It is unclear if the parties have resolved this matter.

### F. Destroying Inadvertently Produced Documents including Personally Identifying Information.

USTC inadvertently produced documents with personally identifying information ("PII"). Mem. in Supp. Second Mot. at 6, D.E. 68. It notified the Insurers, gave them redacted copies, and asked that they confirm that they destroyed the documents with the unredacted PII. *Id.* But it appears the Insurers refused to do so until they filed their response to the Second Motion to Compel. Resp. to Second Mot. at 6. In that document they said that they had destroyed the documents. *Id.*

### G. Order on First Motion to Compel

As noted throughout, this is the Cooperative's second time asking the court to compel the insurers to respond to discovery. The court denied USTC's First Motion to Compel without prejudice. Oct. 7, 2020 Order at 4, D.E 66. The order did not address the merits of the dispute. Instead, it denied the motion because "the parties have engaged in months of discovery" since the motion's filing. *Id.* But the Order cautioned the parties, particularly the Insurers, that "legitimate discovery requests are to be complied with if sanctions are to be avoided." *Id.* at 4.

13

In their section motion, the Cooperative renewed the requests in its first one.[9]

## II.    Discussion

The Federal Rules allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The rules provide several tools, including interrogatories and requests for production, to obtain discovery from other parties. *Id.* 33, 34.

And the Rules allow a requesting party to move to compel if the responding party's discovery responses are incomplete or inadequate. R. Civ. P. 37(a). The party resisting or objecting to discovery "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection, Inc.* v. *Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). To meet this burden, the non-moving party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.*

### A.    Insurers Must Supplement Their Initial Disclosures

The Cooperative claims that the Insurers' Rule 26 Initial Disclosures do not comply with the Rule's requirements in two ways. First it claims that the Insurers needed to produce reinsurance information under Rule 26(a)(1)(A)(iv) but did not do so. Second, it argues that the Insurers need to say more about potentially relevant documents. The Insurers claim their disclosures were "sufficient as they identified, in relevant part, witnesses with knowledge and indicated that documents would be produced." Resp. to First Mot. at 3.

The Insurers' arguments miss the mark. As for the reinsurance agreements, the Rule requires that they disclose any "insurance agreement under which an insurance business may be

---

[9] The court's denial of the original motion without prejudice allows USTC to re-raise those arguments. *See Artis* v. *N.C. Dep't of Health & Hum. Servs.*, No. 5:11-CV-748-BO, 2013 WL 3280240, at *2–3 (E.D.N.C. June 27, 2013); *Med. Components, Inc.* v. *Classic Med., Inc.*, 210 F.R.D. 175 (M.D.N.C. 2002);

liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv). So the only relevant question here is whether a reinsurer may be liable to pay part of a judgment against the Insurers. If so, the Insurers must produce it.

This is true even if the policy "is not itself admissible and does not bear on another issue in the case." Fed. R. Civ. P. 26(b)(2) advisory committee's note to 1970 amendment. That is because disclosure "enable[s] counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation." *Id.*

So the Insurers must amend their initial disclosure to identify any reinsurance agreements that fall under Rule 26(a)(1)(A)(iv). They must also provide a copy to USTC of any agreement or policy they identify.

The Insurers also failed to follow the Rule's requirements about producing documents with initial disclosures. The Rule requires them to produce a copy or a description of all documents[10] in their "possession, custody, or control" that they "may use to support [their] claims or defenses, unless the use would be solely for impeachment[.]" Fed. R. Civ. P. 26(a)(1)(A)(ii). This disclosure must include "all potentially relevant items then known to the party, whether or not supportive of its contentions in the case." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. So a saying that an investigation is ongoing or that relevant documents may exist, as the Insurers did here, is insufficient.

The Insurers must supplement their initial disclosures to either describe or produce all documents required by the Rule. The Insurers need not reproduce documents that they have already produced elsewhere in discovery, but they should identify those documents in their supplemental

---

[10] As used here, the term documents means documents, electronically stored information, and tangible things.

15

disclosures unless they have already produced them in discovery. Any descriptions must meet the requests of Rule 26 and its Advisory Committee Notes.

### B. Despite the Insurers Discovery Responses Being Served a Day Late, the Court Will Not Deem Their Objections Waived.

In their initial motion compel, USTC asked the court to find that the Insurers waived any objections in the responses to USTC's request for admission and requests for production. Mem. in Supp. First Mot. at 6. It renewed this request in its latest motion. Ex. G. to Mem. in Supp. Second Mot., D.E. 68-21. The waiver occurred, according to the Cooperative, when the Insurers served their discovery responses a day late.[11] Saville Aff. ¶¶ 2–3. While failure to respond on time can result in the waiver of objections, given that the one-day delay resulted from a clerical error, the court will decline to find the objections waived.[12]

### C. All Insurers Must Promptly Respond to Interrogatories.

Despite serving interrogatories in December 2019, USTC only received a response from 1 of the 13 Insurers. The Rules required that all Insurers serve verified responses within 30 days after service of the interrogatories unless the parties agreed otherwise, or the court extended the deadline. Fed. R. Civ. P. 6(b), 29(b), 33(b)(2). The Insurers have not tried to justify the delay in responding. And it's unlikely they would have been able to even if they tried.

Rather than provide responses, the Insurers have given USTC nothing but misrepresentations, missed deadlines, and broken promises. Such a course of conduct over a long time compels the conclusion that the non-responsive Insurers and their counsel have acted in bad faith.

---

[11] While USTC did not receive the responses until a week after they were due, the court will credit the Insurers' explanation that they served the responses one day after the deadline.

[12] The court reached a similar conclusion about the Insurers' late responses to USTC's requests for admission. Oct. 7, 2020 Order at 3.

Considering their grossly untimely responses, the Insurers (other than Aegis) have waived any objections that they otherwise could have raised to the interrogatories. Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."). Given the circumstances here, including the finding of bad faith, the court will extend this waiver to objections based on attorney-client privilege or the work-product doctrine. *Urban 8 Fox Lake Corp.* v. *Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 160 (N.D. Ill. 2020) (finding waiver of work-product doctrine for late and inadequate privilege log and citing cases); *Johnson* v. *Ford Motor Co.*, 309 F.R.D. 226, 235 (S.D.W. Va. 2015) ("[C]ourts generally find waiver only in cases involving unjustified delay, inexcusable conduct and bad faith."); *Universal City Dev. Partners, Ltd.* v. *Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 694 (M.D. Fla. 2005); *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001) ("Although most of the reported cases arise in the context of a claim of attorney-client privilege, the "specify or waive" rule applies equally in the context of claims of work product privilege."). The only exception to this waiver is for items that Aegis properly withheld based on the attorney-client privilege or work-product doctrine. The non-responsive Insurers must promptly serve complete, verified responses to USTC's interrogatories.

That leaves the question of the sufficiency of Aegis's responses. The Cooperative sets out a long list of grievances about how Aegis responded to its interrogatories. *See* Ex. C to Mem. in Supp. Second Mot., D.E. 68-17. Aegis has not tried to rebut USTC's claims. *See* Resp. to Second Mot. at 5. So it has not satisfied its burden to show that its answers were proper. Thus the court will require it to supplement its interrogatory responses to address the issues in Exhibit C to the Memorandum of Law in Support of USTC's Second Motion to Compel.

17

## D. All Insurers Must Promptly Respond to Requests for Production of Documents.

There are similar problems with the Insurers' responses to the requests for production. Despite more than a year having passed since service of the requests, only 4 Insurers have responded. As with the interrogatory responses, the non-responsive Insurers make no attempt to explain the delay.

So, as it did with the interrogatories, the court finds that the non-responsive Insurers have waived any objections that they otherwise could have raised to the requests. And for the same reasons described above, the court finds that the non-responsive Insurers and their counsel have acted in bad faith. Thus the court will extend this waiver to objections based on attorney-client privilege or the work-product doctrine. The only exception to this waiver is for items that a responding Insurer properly withheld based on the attorney-client privilege or work-product doctrine. The non-responsive Insurers must promptly serve complete responses to USTC's requests for production.

Assessing the adequacy of the responses to the request for production follows the same path as it did for the interrogatories. USTC pointed out many issues with the Insurers' responses and they did not address them. *Compare* Ex. E to Mem. in Supp. Second Mot. *with* Resp. to Second Mot at 5. So they have not satisfied their burden to show that they responded properly. Thus the court will require the responsive Insurers to supplement their responses to address the issues raised in Exhibit E to the Memorandum of Law in Support of USTC's Second Motion to Compel.

## E. Claims of Attorney-Client Privilege and Work-Product

At various points, the Insurers claim that the attorney-client privilege and work-product doctrine allow them to refuse to provide documents and information. These privilege objections relate to loss reserve information, Resp. to First Mot. at 4; reinsurance information, *id.* at 6; the

18

investigation by Dr. Heard, Resp. to Second Mot. at 24; and interrogatory responses in general, *id.* at 4–5. There is also a dispute over whether the Insurers have complied with the Federal Rules' procedural requirements for asserting the privilege. USTC claims that the privilege logs the Insurers have provided are inadequate.

The court will begin by summarizing the law governing these privilege issues and then delve into each specific item raised by the parties.

### 1.    Attorney-Client Privilege

The attorney-client privilege is the oldest of the common-law privileges and serves to encourage free communications between attorneys and their clients. *Upjohn Co.* v. *United States*, 449 U.S. 383, 389 (1981). To show that the privilege applies, a party must establish five things.[13] First that there was an attorney-client relationship when the communication occurred. *State* v. *Murvin*, 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981). Second, that "the communication was made in confidence[.]" *Id.* Third, that "the communication relates to a matter about which the attorney is being professionally consulted[.]" *Id.* Fourth, that "the communication was made in the course of giving or seeking legal advice for a proper purpose[.]" *Id.* And Fifth, that "the client has not waived the privilege." *Id.*

The party asserting the privilege bears the burden of showing that it has satisfied each element. *In re: Miller*, 357 N.C. 316, 336, 584 S.E.2d 772, 787 (2003) (quoting 1 Scott N. Stone & Robert K. Taylor, *Testimonial Privileges* § 1.61, at 1–161 (2d ed. 1994)). And a conclusory allegation that that the privilege applies is insufficient. *Id.* Instead, the proponent must present "sufficient evidence . . . to establish the privilege with respect to each disputed item." *Id.* This is "usually" done "by means of an affidavit or affidavits[.]" *Id.*

---

[13] As state law governs the claims here, state law also controls the court's attorney-client privilege analysis. Fed. R. Evid. 501.

North Carolina law recognizes that privileged information can be shared with the agent of an attorney or client without vitiating the privilege. *Murvin*, 304 N.C. at 531, 284 S.E.2d at 294. But "the mere fact that an employee is the company's 'agent' in some respects does not necessarily require that a communication involving that employee be found privileged." *Brown* v. *Am. Partners Fed. Credit Union*, 183 N.C. App. 529, 536, 645 S.E.2d 117, 122 (2007). North Carolina's Supreme Court has not staked out a position on where the line falls between agents who can have privileged conversations, and those who cannot. *Glob. Textile All. Inc.* v. *TDI Worldwide, LLC*, 375 N.C. 72, 77, 847 S.E.2d 30, 35 (2020).

Determining the applicability of the privilege is particularly challenging in the context of insurance companies. When attorneys act in a claims handling capacity, the attorney-client privilege does not attach to communications with those attorneys and the insured or its agents. *Westchester Surplus Lines Ins. Co.* v. *Clancy & Theys Constr. Co.*, No. 5:12-CV-636-BO, 2013 WL 6058203, at *6 (E.D.N.C. Nov. 15, 2013) ("[N]o privilege attaches when an attorney performs investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer."). The mere fact that an attorney participates in an investigation will not shroud communications in privilege where they occur in an insurer's normal course of business. *See Melworm* v. *Encompass Indem. Co.*, 37 Misc. 3d 389, 391–92, 951 N.Y.S.2d 829, 832 (Sup. Ct. 2012), *aff'd*, 112 A.D.3d 794, 977 N.Y.S.2d 321 (2013) (citations omitted). Instead, for insurance matters, the attorney-client privilege attaches "when an attorney performs acts for an insurer in his processional [sic] capacity an[d] in anticipation of litigation." *Milinazzo* v. *State Farm Ins. Co.*, 247 F.R.D. 691, 697 (S.D. Fla. 2007).

The Supreme Court of North Carolina has not opined on this issue, but it is reasonable to believe it would reach a similar result. North Carolina's test for the attorney-client privilege

requires that the communication relate to "a matter about which the attorney is being professionally consulted" and that the communication relates to the "giving or seeking of legal advice[.]" *Murvin*, 304 N.C. at 531, 284 S.E.2d at 294. Generally, claims handling and insurance adjusting do not fall within these categories.

So under North Carolina law, the fact that an attorney communicated with the Insurers or their agents is not enough to establish that the communications are privileged. Instead, the Insurers must show that the communication related to the provision of legal advice and not just general business matters. Going forward, Insurers must only withhold documents if they can prove that they have a good-faith basis to believe that the communication related to the provision of legal services.

### 2. Work-Product Doctrine

Under the work-product doctrine, documents prepared "in anticipation of litigation . . . by or for another party or its representative" are generally not discoverable. Fed. R. Civ. P. 26(b)(3)(A).[14] As with the attorney-client privilege, the party invoking the doctrine bears the burden of showing that it applies. *Sandberg* v. *Va. Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir. 1992). Meeting this burden requires making "this showing with a specific demonstration of facts supporting the requested protection, preferably through affidavits from knowledgeable persons." *E.I. Du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, No. 3:09-CV-58, 2010 WL 1489966, at *3 (E.D. Va. Apr. 13, 2010) (internal quotations omitted). Ultimately, the court's decision will turn on whether "the 'primary motivating purpose' behind the performance of the work was to assist in the pending or impending litigation." *Burroughs Wellcome Co.* v. *Barr Labs., Inc.*, 143 F.R.D.

---

[14] Unlike the attorney-client privilege analysis, federal law controls the work-product analysis. *Westfield Ins. Co.* v. *Carpenter Reclamation, Inc.*, 301 F.R.D. 235, 238 (S.D.W. Va. 2014).

611, 617 (E.D.N.C. 1992) (quoting *Application of Minebea Co., Ltd.*, 143 F.R.D. 494, 499 (S.D.N.Y. 1992)).

Courts distinguish between two types of attorney work-product: fact work-product and opinion work-product. Fact work-product, which consists of documents that lack an attorney's mental impressions, "can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proceedings #5 Empaneled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005). The party who seeks disclosure of fact work-product must show a "substantial need" for the document. *United States* v. *Bertie Ambulance Serv., Inc.*, No. 2:14-CV-53-F, 2015 WL 3932167, at *7 (E.D.N.C. June 25, 2015) (citing *Republican Party of N.C.* v. *Martin*, 136 F.R.D. 421, 429 (E.D.N.C. 1991)).

Opinion work-product contains an attorney's "mental impressions, opinions, and legal theories[,]" *Duplan Corp.* v. *Deering Milliken, Inc.*, 540 F.2d 1215, 1223 (4th Cir. 1976), and is "more scrupulously protected as it represents the actual thoughts and impressions of the attorney." *In re Grand Jury Proceedings*, 401 F.3d at 250. Once a document qualifies as opinion work-product it is immune from discovery, except in "very rare and exceptional circumstances." *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997).

Much like with the attorney-client privilege, determining whether the work-product doctrine applies "is particularly difficult in the context of insurance claims." *Kidwiler* v. *Progressive Paloverde Ins. Co.*, 192 F.R.D. 536, 541 (N.D.W. Va. 2000). In the insurance context, courts will generally not find that an insurer gathered information in anticipation of litigation until after it denied the claim. *Pete Rinaldi's Fast Foods, Inc.* v. *Great Am. Ins. Cos.*, 123 F.R.D. 198, 202 (M.D.N.C. 1988). If an insurance company tries to claim that information obtained prior to a

Case 5:19-cv-00430-BO   Document 86   Filed 04/09/21   Page 22 of 36

denial of a claim is in anticipation of litigation, it must "present[] specific evidentiary proof of objective facts demonstrating a resolve to litigate." *Id.* When reviewing the parties' arguments, the court will be searching for the point "where the probability of litigating the claim is substantial and imminent," or stated otherwise, when litigation becomes "fairly foreseeable." *State Farm Fire & Cas. Co.* v. *Perrigan*, 102 F.R.D. 235, 238 (W.D. Va. 1984).

### 3. Process for Invoking the Attorney-Client Privilege or Work-Product Doctrines

The Federal Rules explain the two-step process to properly invoke the attorney-client privilege or work-product doctrine. To begin with, the withholding party needs to "expressly make the claim" that documents are immune from discovery. Fed. R. Civ. P. 26(b)(5)(A)(i). After doing that, it must "describe the nature of the documents, communications, or tangible things" it is withholding. *Id.* 26(b)(5)(A)(ii). The description of the documents must "provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection." Fed. R. Civ. P. 26(b)(5) advisory committee's note to 1993 amendment.

Parties generally satisfy the second requirement by producing a privilege log. *Am. Soc'y For Prevention of Cruelty to Animals* v. *Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 212 (D.D.C. 2006); *Mezu* v. *Morgan State Univ.*, 269 F.R.D. 567, 577 (D. Md. 2010). The responding party must provide the requesting party with the privilege log at or near the time it withholds the otherwise responsive documents. *See* Fed. R. Civ. P. 26(b)(5)(A); Fed. R. Civ. P. 26(b)(5) advisory committee's note to 1993 amendment. ("To withhold materials without such notice is contrary to the rule[.]").

To comply with the Federal Rules, a log must contain enough information to allow the requesting party to evaluate the claim of privilege. At a minimum, a log should contain "the nature of each document, the date of its transmission or creation, the author and recipients, the subject,

and the privilege asserted." *See NRLB* v. *Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011). But in the end, the sufficiency of a log will turn on whether for each document listed it contains "specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *Id.* (quoting *Bowne, Inc.* v. *AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y.1993)).

Failure to comply with the dual requirements of Rule 26(b)(5)(A) can be costly. Flouting either of the Rule's requirements, "may be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26(b)(5) advisory committee's note to 1993 amendment. But because of the important interests served by the attorney-client privilege and work-product doctrine, "courts generally find waiver only in cases involving unjustified delay, inexcusable conduct and bad faith." *Smith* v. *James C. Hormel Sch. of Va. Inst. of Autism*, No. 3:08-CV-00030, 2010 WL 3702528, at *5 (W.D. Va. Sept. 14, 2010) (citing cases).

### 4.    Availability of Work-Product Protection

The parties dispute at what point the Insurers may be able to claim that documents include work-product. No doubt the work-product doctrine can apply to documents created after USTC sued. So the Insurers may withhold documents created on or after August 16, 2019 on that basis.

But what about documents created before that date? On the record before the court, the Insurers have not met their burden to show that it believed litigation was imminent before USTC sued. They assert that the doctrine should apply to documents created pre-filing, but they provide no "specific evidentiary proof of objective facts demonstrating a resolve to litigate." *Pete Rinaldi's Fast Foods, Inc.*, 123 F.R.D. at 202. And the information submitted by USTC shows that the Insurers did not anticipate litigation at any point before the Cooperative sued. Williams Dep. 68:22–69:5 at D.E. 74-1. So the court finds that documents created before the filing of the complaint have no right to protection under the work-product doctrine.

24

### 5. The Insurers Must Produce Documents It Has Withheld but Omitted from the Privilege Log.

USTC argues that the privilege logs are incomplete because they lack entries for partially redacted documents. Although Insurers claim the supplemental privilege logs cure such infirmities, USTC disagrees. It argues not only that the omissions remain an issue, but also that the Insurers have failed to remedy the deficiency as assured and have now gone silent on this issue. *See* Ex. 2 to Supp. Reply to Second Mot., D.E. 84-2.

Once again, there is no excuse or justification for the Insurers' inability to produce timely and complete privilege logs. It is yet another example of bad faith conduct by the Insurers and their counsel. So the court holds that the Insurers have waived the protection of the attorney-client privilege or work-product doctrine for any responsive document that Insurers have redacted or withheld based on the privilege or doctrine, not included on a privilege log. *See Westchester Surplus Lines Ins. Co.,* 2013 WL 6058203, at *5 (finding party had waived work-product protection for documents not included in the privilege log); *Herbalife Int'l, Inc.* v. *St. Paul Fire & Marine Ins. Co.*, No. 5:05-CV-41, 2006 WL 2715164, at *4 (citing *Atteberry* v. *Longmont United Hosp.,* 221 F.R.D. 644, 649 (D. Colo. 2004)). The Insurers must promptly produce complete, unredacted copies of responsive documents that they have withheld, in whole or in part, based on attorney-client privilege or the work-product doctrine, but do not appear on a privilege log.

### 6. Insurers Must Supplement Their Privilege Logs to Comply with the Federal Rules

The court has reviewed the Insurers' privilege logs and finds them wanting. As outlined by USTC, many entries lack enough information to establish that the Insurers properly invoked the attorney-client privilege or work-product doctrine. *See* Mem. in Supp. First Mot. Ex. 5, D.E. 68-5. The Insurers must supplement their privilege logs to address all issues raised Exhibit B to

25

USTC's Memorandum in Support of its Second Motion to Compel. D.E. 68-16. Additionally, the revised logs will specify which discovery response the withheld documents respond to.

The Insurers must also review each document currently listed on a privilege log to ensure that there is a good-faith basis for withholding the document.

### 7. The Insurers Have Not Established That It Can Withhold the Heard Documents Under the Attorney-Client Privilege

The parties dispute whether the Heard Documents are discoverable. In response to the Insurers' claim of privilege, [15] USTC argues that since they are relying on Dr. Heard's report, they cannot withhold these documents. The Insurers' response brief discusses the general contours of the attorney-client privilege. Resp. to Second Mot. at 2–4. But it does not refute USTC's argument that the Insurers are relying on the Heard Documents. Nor does it address the implication of that reliance on the applicability of the privilege.

The Insurers' silence on this issue has consequences, since they have the burden to show that the privilege applies and that they have not waived it. By not addressing this issue, they have conceded it. *See Clear Sky Car Wash, LLC* v. *City of Chesapeake, Va.*, 910 F. Supp. 2d 861, 871 (E.D. Va. 2012) ("Because Plaintiff fails to address jurisdiction . . . in any of its responsive briefs to the motions to dismiss, the Court deems such grounds abandoned."); *Kinetic Concepts, Inc.* v. *Convatec Inc.*, No. 1:08-CV-00918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010) (collecting cases). Thus, the court finds that the Insurers have not met their burden to show that they have not waived the privilege by relying on the Heard Documents.

But even if they had not waived this argument, they would not have prevailed on the merits. North Carolina's appellate courts recognize that a client can waive the attorney-client privilege by

---

[15] Although at some point Insurers may have claimed that the work-product doctrine also shielded the disclosure of Dr. Heard's report and other documents, they do not advance this theory in their responsive memorandum to the Second Motion to Compel. So the court will not consider that issue as it relates to Dr. Heard's report.

putting privileged information at issue. *State* v. *Taylor*, 327 N.C. 147, 152, 393 S.E.2d 801, 805 (1990) (finding a defendant who brought an ineffective assistance of counsel claim waived the attorney-client privilege over matters relevant to that claim); *Jones* v. *Nantahala Marble & Talc Co.*, 137 N.C. 49 S.E. 94 (1904) (waiving attorney-client privilege by calling former attorney as witness in fee dispute).

The Supreme Court of North Carolina, however, has not set out a test to govern when an at-issue waiver occurs in other circumstances. Yet the court is comfortable finding that it would find such a wavier here because the circumstances of this case satisfy both leading tests for an at-issue waiver. The information in the Heard Documents is highly relevant and, it appears, the Insurers will rely on it to defend their claims. *Hearn* v. *Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975); *Rhone-Poulenc Rorer, Inc.* v. *Home Indem. Co.*, 32 F.3d 851, 863–864 (3d Cir. 1994).

The Insurers have waived the protections of the attorney-client privilege for the Heard Documents. So they cannot withhold them on that basis. The Insurers must promptly produce the Heard Documents.

### 8.    Loss Reserve and Reinsurance Information

USTC seeks information from the Insurers' and on loss reserve and reinsurance matters. It maintains these materials could offer information on Insurers' investigation and assessment of coverage or exposure. The Insurers responded by saying that USTC has not shown that the reinsurance information is relevant, and, in any event, the attorney-client privilege or work-product doctrine protects both types of documents.

The court will begin by assessing the relevance of the reinsurance information. It will then turn to whether the Insurers can withhold the documents based on the attorney-client privilege or

work-product doctrine. But, ultimately, the court cannot agree with the Insurers' positions on these issues.

### a)     Relevance of Reinsurance Information

Both parties cited case law in their favor on the discoverability of reinsurance documents. *Compare* Mem. in Supp. First Mot. at 8–9 *with* Rep. to First Mot. at 6–7. These conflicting cases show that there is no bright-line rule on this topic. Instead, the relevance of reinsurance matters, like all matters, depends on whether it is relevant to the claims or defenses in the case.

The Insurers claim that USTC has not shown the reinsurance information to be relevant. But USTC does not have the burden to show relevance. Quite the opposite, it is the Insurers who must show a lack of relevance. *Silicon Knights, Inc.* v. *Epic Games, Inc.*, 917 F. Supp. 2d 503, 534 (E.D.N.C. 2012).

USTC has provided several reasons why the requested information may be relevant to its claims. Mem. in Supp. First Mot. at 8–9. The Insurers have not rebutted its arguments. Rep. to First Mot. at 6–7. So the court finds that the Insurers have not met their burden and thus the court finds the reinsurance information to be relevant.

### b)     Immunity of Documents from Discovery

The court must next consider whether the attorney-client privilege or work-product doctrine applies to either set of documents.

The Insurers' brief discusses why communications about loss reserves or reinsurance *may be* immune from discovery. And they repeatedly assert that those documents *should be* immune from discovery. But they presented no evidence showing that the documents *are* immune from discovery.

For example, their brief contains several statements in support of their arguments.

28

- Loss reserves "were established or adjusted in consultation with outside counsel in anticipation of or within the course of litigation." Resp. to First Mot. to Compel. at 5.

- "Insurers . . . consulted with counsel in order to set and establish a reserve which falls within attorney-client privilege." *Id.*

- "The Insurers retained counsel for the purposes of setting a reserve and issuing a coverage opinion." *Id.*

- "The confidential communications sought by USTC were made for the purpose of determining potential liability[.]" *Id.* at 5–6.

But unsworn statements in a brief are not evidence. *See Kulhawik* v. *Holder*, 571 F.3d 296, 298 (2d Cir. 2009); *Erway* v. *U.S. Transp. Sec. Admin*, No. 5:20-CV-00141-M, 2020 WL 6370981, at *5 (E.D.N.C. Oct. 9, 2020); *Adjabeng* v. *GlaxoSmithKline, LLC*, No. 1:12-CV-568, 2014 WL 459851, at *3 (M.D.N.C. Feb. 5, 2014) (collecting cases holding that counsel's unsworn statements in briefs are not evidence). And merely asserting that documents are privileged or work-product is insufficient. *See Taylor* v. *Perni*, 265 N.C. App. 587, 590, 829 S.E.2d 240, 243 (2019). Instead, the Insurers needed to submit affidavits or other evidence to provide an "objective indicia" that they are properly withholding the documents. *Id.* They did not do so and thus they cannot withhold the loss reserve and reinsurance information.

Besides not establishing that the documents are immune from discovery, the Insurers have failed to show that they have not waived protections that might otherwise apply. A client waives the privilege "when he offers testimony concerning the substance of the communication." *State* v. *Tate*, 294 N.C. 189, 193, 239 S.E.2d 821, 825 (1978). A waiver also occurs when a client reveals privileged information to someone outside the privileged relationship. As noted above, the privilege's proponent bears the burden of showing that it has waived the privilege. *In re: Miller*, 357 N.C. at 336, 584 S.E.2d at 787; *Murvin*, 304 N.C. at 531, 284 S.E. at 291. Similar rules apply to the work-product doctrine. *United States* v. *Nobles*, 422 U.S. 225, 239 n.14 (1975) (discussing

29

wavier of work-product by testimonial use); *Wells* v. *Liddy*, 37 F. App'x. 53, 65 (4th Cir. 2002) (explaining that the burden of showing non-waiver lies with the proponent of the work-product doctrine).

The record establishes that waiver occurred for both loss reserve and reinsurance issues. There has been both deposition testimony and document production on these topics. Ex. F to Mem. in Supp. Second Mot., D.E. 68-13. The testimony, while brief, was substantive. *Id.* And while the Insurers may have produced the documents inadvertently, they have never clawed them back. *Id.*

In defense of their position, the Insurers cite *Hayes* v. *Ricard*, 244 N.C. 313, 93 S.E.2d 540 (1956). They claim this case says that a wavier only occurs when testimony about privileged matters reaches a point so that "fairness requires" a finding of waiver. Resp. to Second Mot. at 6.

But this language, read in context, deals with the scope of a waiver, not whether one had occurred. The state Supreme Court recognized that when an attorney testified about a privileged topic, he waived the privilege "with respect to the matters about which he testified. However, the waiver did not extend to other and independent transactions." *Hayes*, 244 N.C. at 323, 93 S.E.2d at 548. So the disclosure of allegedly privileged matters through testimony and document production waived the attorney-client privilege for communications about loss reserves and reinsurance. As for the work-product doctrine, the court finds that the waiver applies to all fact work-product related to the topics of reinsurance and loss reserves. *In re Martin Marietta Corp.*, 856 F.2d 619, 623 (4th Cir. 1988). But any waiver of opinion work-product extends only to the information disclosed. *Id.*

The court thus finds the Insurers must promptly produce the requested documents on loss reserves and reinsurance as required by this order.

### F.    Information on Similar Claims.

USTC wants the Insurers to provide documents related to other mold claims over a 10-year period. The Insurers claim that the request is overbroad because it is not limited only to mold growth in stored tobacco. They also argue that the burden to produce this information would be "enormous" and that the request is not proportional to the needs of the case.

Once again, the court will reject the Insurers' arguments because they have not met their burden. As for the overbreadth argument, the Insurers have not shown that information on mold damage beyond those involving stored tobacco is not relevant to the claims and defenses in this case. Nor have they provided any evidentiary support for their claims about the burden of production or proportionality, which the Rules require them to do. *See Mondragon* v. *Scott Farms, Inc.*, 329 F.R.D. 533, 549 n.4 (E.D.N.C. 2019). So since they have not met their burden, they must produce the requested information.

The Insurers also claim that this request requires them to produce privileged or confidential information. The court has entered a protective order, so that addresses any concerns of confidentiality. But given that requiring disclosure of information may impact the attorney-client privilege rights of third parties, the court will allow the Insurers to withhold documents on privilege grounds or work-product doctrine. They must, however, expressly claim the privilege and provide an adequate privilege log. Failure to do either of these things will result in a waiver of those protections.

### G.    Destroying PII

According to USTC, the Insurers' failed to confirm that they have destroyed documents including personal identifiable information that they have otherwise produced. The Insurers say that they have done so. Still, given the number of occasions when the Insurers' representations did not turn out to be true, the court orders them to ensure they have destroyed the documents at issue

within seven days of this order's entry and to provide written notice of their destruction to USTC in either an affidavit or declaration under 28 U.S.C. § 1746.

## H. Deposition of Mitsui Corporate Designees

USTC also claims Insurers have failed to arrange for the deposition of Mitsui's corporate designee. Insurers maintain that they have produced two corporate representatives on behalf of Mitsui—Stephen Holmes and James A. Lawson—who were deposed in June 2020.

Based on this information, Insurers will notify USTC within seven days whether Mitsui agrees to be bound by the testimony of Holmes and Lawson. If Mitsui does not agree to be bound by Holmes's and Lawson's testimony, it will provide, within the same seven-day period, the identity of its corporate designee and three potential dates for that individual's deposition in the next 30 days.

## I. Costs, Fees, and Sanctions

The Federal Rules provide for the shifting of costs and fees associated with a discovery motion in certain circumstances. If the court grants a motion to compel, it "must" require the responding party, or their attorneys, to pay the movant's "reasonable expenses incurred" in connection with the motions. Fed. R. Civ. P. 37(a)(5)(A). An award of expenses can include the payment of attorney's fees. *Id.* The only exceptions to these rules are if the moving party "filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;" the non-moving party's actions were "substantially justified;" or "other circumstances make an award of expenses unjust." *Id.* The non-moving party is entitled to be heard before the court decides whether cost-shifting is appropriate. *Id.*

32

The Rules also allow a court to sanction parties who do not act in good faith during the discovery process. *See* Fed. R. Civ. P. 26, 37. The court also has the inherent authority to impose sanctions for that type of conduct.

When the court denied the First Motion to Compel without prejudice, the court told the Insurers that "legitimate discovery requests are to be complied with if sanctions are to be avoided." Oct. 7, 2020 Order at 4. That warning, apparently, went unheeded.

By separate order, the court will set a hearing to address whether an exception to Rule 37's cost shifting provision applies here, what sanctions it should impose under Rule 26 and 37 as well as the court's inherent authority to sanction parties and attorneys, and any other matters relevant to conduct of the Insurers and their counsel.

## III. Conclusion

For all these reasons, the court will grant USTC's Second Motion to Compel as described above. The court orders as follows:

1. Initial Disclosures

    a. The Insurers must supplement their Initial Disclosures as required by this order.

2. Interrogatory Reponses

    a. Each Insurer must serve complete, verified responses to USTC's interrogatories.

    b. The Insurers, other than Aegis, have waived any objections, including attorney-client privilege and work-product, that they otherwise could have raised in response to the interrogatories.

    c. The responses must comply with the requirements of this order as described above.

33

d. The responses must also address the Outstanding Issues set forth in Exhibit C to the Memorandum of Law in Support of USTC's Second Motion to Compel, including producing information relating to Dr. Stephanie Heard.

3. Requests for Production

   a. Each Insurer must serve complete responses to USTC's requests for production.

   b. The Insurers, other than Aegis, MS Amlin, Mitsui, and Canopius, have waived any objections, including attorney-client privilege and work product, that they otherwise could have raised in response to the interrogatories.

   c. The responses must comply with the requirements of this order as described above.

   d. They must also address the Outstanding Issues set forth in Exhibit E to the Memorandum of Law in Support of USTC's Second Motion to Compel including producing information relating to Dr. Stephanie Heard.

   e. Insurers must identify which documents are responsive to each request.

4. Heard Documents

   a. Insurers must produce all documents relating to Dr. Stephanie Heard, including her cause and origin report, all email communications with Dr. Heard, and all internal files and emails between Insurers referring to any work Dr. Heard performed on USTC's insurance claim.

5. Loss Reserves and Reinsurance

   a. To the extent described above, Insurers must produce documents including information relating to reserves, reinsurance, and similar claims responsive to USTC's document requests and respond fully to USTC's pending interrogatories about reserves, reinsurance, and similar claims.

34

6. Similar Claims

    a. To the extent described above, Insurers must produce documents with information relating similar claims responsive to USTC's document requests.

7. Privilege Log

    a. The Insurers must promptly produce complete, unredacted copies of documents that they have withheld, in whole or in part, based on attorney-client privilege or the work-product doctrine, but do not appear on a privilege log.

    b. The Insurers must review all documents currently included on privilege logs to ensure that there is a good-faith basis for withholding each document.

    c. The Insurers must review all entries on their privilege logs to ensure that they contain sufficient information to allow the Court and USTC to assess Insurers' claims of privilege and work-product.

    d. The Insurers must supplement their privilege logs to address the issues set out in Exhibit B to the Memorandum of Law in Support of USTC's Second Motion to Compel.

    e. The supplemental privilege log must state specific facts that justify withholding each document.

8. Mitsui 30(b)(6) Representative

    a. Insurers will notify USTC within 7 days of the date the court enters this order whether Mitsui agrees to be bound by the testimony of Holmes and Lawson.

    b. If Mitsui does not agree to be bound by Holmes's and Lawson's testimony, Insurers will provide the identity of Mitsui's corporate designee and three potential dates for

that individual's deposition to occur within 30 days from that date, unless the parties agree otherwise.

9. PII Information

    a. Within 7 days of the date the court enters this order, Insurers must confirm in writing, either through an affidavit or declaration under 28 U.S.C. § 1746, that they have destroyed all documents including PII

10. Insurers must complete all tasks required by this order no later than 14 days after the court enters it, unless specifically noted otherwise.

11. Within 30 days after Insurers serve their amended privilege logs, the parties must meet and confer about any privilege log entry for which USTC still has questions on the claimed privilege.

    a. If the parties cannot resolve a dispute about any withheld document, USTC will notify the undersigned's case manager. The court will schedule a hearing to address these remaining matters.

    b. Rule 37's provisions on the assessment of costs and fees will apply to issues that remain unresolved after the meet and confer process.

Dated: April 9, 2021.

_Robert T. Numbers II_

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE