IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-00430-BO

| | |
|---|---|
| U.S. TOBACCO COOPERATIVE, INC.,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO POLICY NUMBERS B1353DC1703690000 AND B1353DC1602041000 | )<br>)<br>)<br>)  **MEMORANDUM IN OPPOSITION TO**<br>)  **PLAINTIFF'S MOTION FOR**<br>)  **SANCTIONS [D.E. 91]**<br>)<br>)<br>)<br>)<br>) |

**NATURE OF THE CASE AND INTRODUCTION**

This case involves an insurance dispute regarding a claim for damages to tobacco under policies of insurance issued by Certain Underwriters at Lloyd's Subscribing to Policy Numbers B1353DC1703690000 and B1353DC1602041000 ("Underwriters" or "Defendants")[1] to Plaintiff, U.S. Tobacco Cooperative, Inc. ("USTC" or "Plaintiff"). Plaintiff filed the current Motion for Sanctions [D.E. 91] regarding certain discovery disputes and this Court's Order granting Plaintiff's Motion to Compel [D.E. 86] (the "Order"). As discussed in greater detail below, the Defendants were unaware of the manner in which their attorney, James A. Saville ("Mr. Saville"), was handling or failing to handle this case, and because an apparent mental health issue caused him to

---

[1] Defendants Certain Underwriters at Lloyd's Subscribing to Policy Numbers B1353DC1703690000 and B1353DC1602041000 are actually a group of insurers, which among others, includes three lead/leading insurers: AEGIS Syndicate 1225 at Lloyd's of London (leading insurer on policy numbers B1353DC1703690000 and B1353DC1602041000), MS Amlin Syndicate 2001 at Lloyd's of London (lead insurer on policy number B1353DC1703690000), and RiverStone Managing Agency Limited representing Syndicate 3210 at Lloyd's of London (lead insurer on policy number B1353DC1602041000). Canopius Syndicate 4444 (Canopius) is a claims agreement party on both policies B1353DC1703690000 and B1353DC1602041000.

abandon his responsibilities to his clients, it would be unjust for the Court to award the requested sanctions. Instead, Defendants respectfully submit that this Court should deny Plaintiff's Motion, afford Defendants the opportunity to complete discovery under the guidance of their new counsel, and permit this case to proceed to a determination on the merits.[2]

## FACTUAL BACKGROUND

Plaintiff commenced this action in the North Carolina General Court of Justice, Superior Court Division, for the County of Wake, under File No. 19-cv-11374 (the "State Court Action") on August 16, 2019 alleging: 1) entitlement to a Declaratory Judgment determining that damages or losses to Plaintiff's tobacco were covered by insurance policies issued by Defendants; 2) breach of contract based upon Defendants' alleged failure to reimburse Plaintiff for its losses; 3) Bad Faith; and 4) Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1.1 and related statutes. [D.E. 1-1].

Defendants removed the proceeding to this Court on September 27, 2019 and filed their Answer on December 10, 2019. [D.E. 9]. On December 13, 2019, Plaintiff served Defendants with its first set of written discovery, including interrogatories and requests for production of documents with responses due on January 15, 2020. [D.E. 86, pg. 6]. Defendants acknowledge based upon their current understanding of the proceedings, that this deadline was not met.[3] *Id.*

Apparently, between January 2020 and May 2020, Plaintiff's counsel and Mr. Saville had numerous "meet and confer" discussions and exchanged correspondence regarding Defendants' outstanding discovery obligations, certain of which are set out in this Court's Order [D.E. 86], in

---

[2] In the event this Court does determine that sanctions are warranted, for the reasons set forth herein, those sanctions should not fall on the Defendants, and certainly should not include the striking of Defendants' answer and/or entry of a default judgment.

[3] The totality of Defendants' present understanding of the discovery in this case comes almost exclusively from an after the fact review of the court's docket, in particular, the briefings on the various motions.

2

which Mr. Saville seemingly repeatedly assured Plaintiff's counsel that he would bring Defendants' discovery responses into compliance.

According to the Court docket, Plaintiff filed its first Motion to Compel on April 4, 2020 [D.E. 28], which was denied without prejudice on October 8, 2020 [D.E. 66]. In response to this Motion to Compel, Mr. Saville apparently represented that Defendants had provided certain responsive documents and that "Certified responses to Interrogatories will be produced promptly." [D.E. 34, pg. 3].

However, according to Anthony Pruzinsky ("Mr. Pruzinsky"), Mr. Saville's prior partner (currently employed as "counsel" at Mr. Saville's firm), while the above events were unfolding, and going back as far as January 2020, Mr. Saville had apparently ceased responding to client inquiries and discovery matters in numerous cases, including this one. Declaration of Anthony Pruzinksky dated July 22, 2021 ("Pruzinsky") at ¶¶ 3-6.

In early September 2020, Mr. Saville and counsel for Plaintiff seemingly had additional telephone conversations and exchanged correspondence in which Saville again promised "revised and verified Interrogatory Responses for Aegis" and "complete and verified" responses from the other insurers by September 11, 2020. [D.E. 68-5, pg. 8] (email from Dehnel to Saville and Guilbert dated September 4, 2020). Further, similar representations were apparently made by Mr. Saville later in September 2020. *Id.* at pg. 15 (email from Dehnel to Saville and Karn). However, as Mr. Saville had not informed his clients of any of these discovery issues, he had no basis whatsoever to enter into any such agreement with Plaintiff's counsel. *See* Declaration of Richard Foulger dated July 23, 2021 ("Foulger") at ¶9; Declaration of Stephen Holmes dated July 23, 2021 ("Holmes") at ¶ 8; Declaration of Adam Smith dated July 23, 2021 ("Smith") at ¶ 8; Declaration of Carl Page dated July 23, 2021 ("Page") at ¶ 6; Declaration of Rebecca Hill dated July 23, 2021

3

("Hill") at ¶ 6, Declaration of Ian Everley dated July 23, 2021 ("Everly") at ¶ 6; Declaration of Lukasz Rozwadowski dated July 23, 2021 ("Rozwadowski") at ¶ 6; Declaration of Darren Stewart Dated July 23, 2021, ("Stewart") at ¶ 6; Declaration of Leonie Parkins dated July 23, 2021 ("Parkins") at ¶ 6; Declaration of Tom Newman dated July 23, 2021, ("Newman") at ¶ 6; Declaration of Sheni Deboo dated July 23, 2021 ("Deboo") at ¶ 6; and Declaration of Robyn Birch dated July 23, 2021 ("Birch") at ¶ 6

On October 12, 2020, Plaintiff filed its Second Motion to Compel, which again raised issues with Defendants' Interrogatory responses. [D.E. 67]. In response to the Second Motion to Compel, Mr. Saville wrote that "Interrogatory responses have been served and are undergoing amendment to the extent required." [D.E. 69, pg. 7.]. However, because Mr. Saville had not communicated any of these issues to his clients, it was not possible for him to do this in a meaningful way. *See generally* Pruzinsky, Foulger, Holmes, Smith, Page, Hill, Everley, Rozwadowski, Stewart, Parkins, Newman, Deboo and Birch (collectively the "Underwriter Declarations").

In November 2020, while the Second Motion to Compel was still pending, Mr. Saville apparently again discussed the outstanding discovery responses with counsel for Plaintiff, acknowledged that responses were outstanding, and committed to a date certain by which complete verified responses would be served. [D.E. 84-1] (email from Dehnel to Saville). Mr. Saville also apparently attended a meet and confer call on December 4, 2020, in which he agreed to produce interrogatory responses from all Defendants by December 11, 2020. [D.E. 84-2, pg. 3] (email from Dehnel to Saville and Karn). However, it was again impossible for Mr. Saville to satisfy that agreement because he had not advised his clients of the issue. *See* Underwriter Declarations.

4

Similarly, unfulfillable obligations were assumed by Mr. Saville at the hearing on the Plaintiff's Second Motion to Compel in December 2020. *See* [D.E. 92-1].

On April 9, 2021, this Court issued the Order [D.E. 86]. Yet, Mr. Saville never provided that Order to Defendants. *See* Underwriter Declarations. In fact, they only received it when it was sent to them by new counsel that had replaced Mr. Saville. [D.E. 96-2, Foulger at ¶¶ 6-8] and Underwriter Declarations. In addition to issuing the Order, the Court entered an April 12, 2021 Order (the "Hearing Order"), setting an in person hearing in Raleigh, NC on May 3,2021 (the "Hearing") [D.E. 88], which the Defendants were also not made aware of until June 18, 2021, and therefore did not attend. [D.E. 96-2, Foulger at ¶¶ 6-8].[4]

The Hearing occurred as noticed, and Mr. Saville informed the Court and Plaintiff's counsel (at the Hearing and in a brief follow-up meet and confer conference) that he would work to bring Defendants' discovery into compliance. [D.E. 92, pg. 3]. However, Mr. Saville apparently did not follow-up with Plaintiff's counsel during the days after the Hearing, which resulted in Plaintiff's counsel sending Mr. Saville a letter dated May 7, 2021, outlining what he believed Mr. Saville had agreed to do with respect to Defendants' discovery obligations during their brief post-Hearing meeting, and which demanded that Mr. Saville cure the alleged deficiencies. [D.E. 92-2]. The letter further indicated that if this was not done by May 14, 2021, Plaintiff would inform the Court. *Id.* Defendants were never made aware of this letter or Plaintiff's threats to seek further court intervention.[D.E. 96-2, Foulger at ¶¶ 6-8]. *See also* Underwriter Declarations.

---

[4] The current set of circumstances illuminates the reason why Mr. Foulger was apparently unaware that Plaintiff filed a Motion for Summary Judgment in this case when he was deposed. *See* [D.E. 97, pg. 8-9 & fn. 5] (citing Foulger Dep, 161:22-163:2).

5

On May 11, 2021, Mr. Saville emailed Plaintiff's counsel suggesting additional discussions between them. [D.E. 92-3] (emails between Saville and Dehnel), presumably to make it appear as though Mr. Saville was seeking to work through the outstanding discovery. However, given the fact that Mr. Saville was not even communicating with his clients at all regarding the events set out above, such conversations would have been pointless. *See also* Underwriter Declarations.

On May 13, 2021, one of Mr. Saville's junior level associates, who has not appeared in this proceeding, telephoned Plaintiff's counsel and requested until May 21, 2021 to rectify the alleged discovery shortcomings. [D.E. 92-4]. During that call, Mr. Saville's associate, presumably at the urging of Mr. Saville, apparently made additional representations regarding what Defendants would do to bring their discovery responses into compliance with the Order. *Id.* However, again, the Defendants had not been contacted about this, were totally unaware of the Order, the Hearing, and the Hearing Order, rendering such representations impossible to fulfill. [D.E. 96-2, Foulger at ¶¶ 6-8]. *See also* Underwriter Declarations.

While the above events were unfolding, Defendant Aegis's representative, Richard Foulger, reached out to Mr. Pruzinsky and requested that he intervene with Mr. Saville, as he had failed to respond to numerous requests for advice in this matter. Pruzinsky at ¶ 5-6. Mr. Pruzinsky brought this contact to Mr. Saville's attention and assumed that any issues were minor and being taken care of. *Id.* However, Mr. Pruzinsky later learned that was not the case, and that Mr. Saville's issues were longstanding, dating back as far as January 2020. *Id.*

Following issuance of the Order, Plaintiff filed its Motion for Sanctions [D.E. 91] on May 24, 2021, with a response due on or before June 14, 2021, per Local Rule 7.1(f)(1). Mr. Saville did not forward the motion to his clients and did not prepare a response. *See* [D.E. 96-2, Foulger at ¶¶ 6-8] and July 23, 2021 Declaration of Michael J. Tricarico ("Tricarico") at ¶8.

6

On June 15, 2021, after becoming further concerned about this matter's status and Mr. Saville's lack of reporting, Mr. Foulger instructed new counsel to assist in this case and requested via email that Mr. Saville provide his full cooperation. [D.E. 96-2, Foulger at ¶¶ 4-6]. On June, 18, 2021, through their new counsel from Kennedys CKM LLP ("Kennedys"), Defendants were finally provided with the Order, Hearing Order and the currently pending Motion for Sanctions. *Id.* at ¶¶ 7-8. Mr. Saville was removed from the case by the lead Underwriters on June 21, 2021, and Defendants' new counsel was instructed to take over as the lead attorneys and contact Defendants local counsel (whom Defendants had never dealt with directly until this point). *Id.* at ¶ 9. The following Underwriters, who have very little active involvement in claims handling, and are very often not required to provide discovery, were informed of Mr. Saville's replacement several days later.[5] Mr. Saville has never contacted Defendants newly appointed counsel. Tricarico at ¶ 17.

As it turns out, while the above events were unfolding, "During the week of June 14, 2021, it became known to [Mr. Saville's] partners that there were a number of problems with some of the ongoing cases he was handing, including this one." Pruzinsky at ¶ 3. On June 22, 2021, Mr. Saville's partners approached Mr. Pruzinsky and requested he look into the matter. *Id.* It was subsequently determined by Mr. Pruzinsky that "[Mr. Saville] had experienced a mental breakdown of some sort that affected his performance across the board." *Id.* at ¶ 7. Since learning of the matter on June 22, 2021, Mr. Pruzinsky undertook "on behalf of [Hill Rivkins LLP ("Hill Rivkins")] to deal with each of the matters that have raised questions about [Mr. Saville's]

---

[5] Because plaintiffs often do not seek discovery from following Underwriters, they were particularly unaware that there were any discovery issues at all (Page, at ¶6; Hill at ¶6; Everley at ¶6; Rozwadowski, at ¶6; Stewart at ¶6; Parkins at ¶6; Newman at ¶6; Deboo at ¶6; and Birch at ¶6; ), whereas when the lead Underwriters had any discussions with Mr. Saville concerning discovery, they were assured by him that any issues were minor and would be resolved. Foulger at ¶ 4; Holmes at ¶ 4; and Smith at ¶ 4.

performance, and he has been relieved, at least temporarily, of his case handling responsibilities. *Id.* "Although initially resistant to the thought, but at the encouragement of his partners, [Mr. Saville] has engaged in and is seeking psychiatric/medical assistance to deal with these issues." *Id.* at ¶ 9.

Mr. Pruzinsky has assisted Mr. Saville in "finding appropriate help." *Id.* Due to Mr. Saville's unfortunate situation, which Mr. Pruzinsky only feels comfortable fully detailing in an "*in camera* setting," Hill Rivkins has now "been replaced in two cases, including this one, by other counsel, whom [Mr. Pruzinsky] is assisting to deal with and rectify any issues raised by [Mr. Saville's] performance in those cases." *Id.* at ¶¶ 3 &8. However, at Mr. Pruzinsky's request, Mr. Saville has not been permitted to discuss the current issues with the undersigned. *See id.* at ¶ 9.

## STANDARD OF REVIEW

"Rule 37(d) of the Federal Rules of Civil Procedure gives the district court wide discretion to impose sanctions for a party's failure to comply with its discovery orders." *Mut. Fed. Sav. & Loan Ass'n v. Richards & Associates, Inc.*, 872 F.2d 88, 92 (4th Cir. 1989). "When the sanction involved is judgment by default, the district court's "range of discretion is more narrow" because the district court's desire to enforce its discovery orders is confronted head-on by the party's rights to a trial by jury and a fair day in court." *Id.* (internal citations omitted).

"[T]hose competing interests require the application of a four-part test: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. Such an evaluation will insure that only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority

8

of the district court and the Rules, will result in the extreme sanction of dismissal or judgment by default." *Id.* (internal citations omitted).

## ARGUMENT

### a) Statement of the Issues

The issues which must be determined by the Court in ruling on the instant motion are whether it should award sanctions against Insurers, and if so, whether the most extreme sanctions of striking Defendants' Answer and issuing a default judgment are warranted. The Court should deny Plaintiff's Motion for the following reasons: First, all the conduct complained of by Plaintiff is attributable to Defendants' former counsel, Mr. Saville, who due to apparent mental health issues, effectively abandoned Defendants in this litigation, and began acting against their interests and in favor of his own. Second, if sanctions are awarded, the most severe sanctions consisting of the entry of a default judgment and the striking of Defendants' Answer are simply not warranted.

### b) Mr. Saville's conduct is not attributable to Defendants.

When this Court entered its Order granting Defendants additional time to respond to the current Motion, it referenced *Cadet v. Fla. Dep't. of Corr.*, 853 F.3d 1216 (11th Cir. 2017), and directed Defendants "to address why, given the standard principles of agency law, they should not be held responsible for their attorney's conduct." [D.E. 101]. *Cadet* (and related United States Supreme Court cases) ultimately support Defendants' position that they should not be punished for Mr. Saville's conduct because his deteriorating mental health caused him to effectively abandon his clients, and in the interest of self-preservation, make representations to the Court and Plaintiff's counsel that he knew (or should have known) he could not keep, all of course, to the detriment of his clients.

In *Cadet* the Eleventh Circuit considered, under the doctrine of equitable tolling, the circumstances in which a party should be bound by counsel's failure to meet a deadline to seek

9

federal habeas corpus relief. There, to determine if tolling was warranted, the court examined the (1) due diligence exercised by the harmed party, and (2) whether there were "extraordinary circumstances" that would essentially sever the principal/agent relationship. *Id.* As discussed in more detail below, Mr. Saville's handling of this litigation and abandonment of his clients are exactly the sort of extraordinary circumstances that require the principal/agent relationship between an attorney and his client to be disregarded, thus relieving a client from the consequences of its attorney's actions.

The *Cadet* plaintiff was sentenced to life imprisonment following a conviction in a Florida state court, which was affirmed on appeal. *Id.* at 1219. Following his conviction, the plaintiff's counsel erroneously calculated his deadline for filing a federal habeas corpus petition based on the impact of a previously filed and dismissed state habeas action. *Id.* Before his counsel filed the federal action, the plaintiff argued with his counsel about the appropriate filing deadline. *Id.* at 1220. After the federal petition was filed, the state of Florida opposed the petition as untimely. *Id.* Realizing that he had miscalculated the deadline, the plaintiff's attorney sought to have it equitably tolled. *Id.* However, the district court concluded that "counsel's error in failing to correctly calculate the deadline for filing the habeas petition "constituted an act of negligence <u>during</u> the attorney-client relationship," not a constructive abandonment of that relationship and held that equitable tolling was not warranted. *Id.* (emphasis in original).

On appeal the Eleventh Circuit framed the issue as "whether [the attorney's] actions in failing to timely file a § 2254 petition constituted an 'extraordinary circumstance' for purposes of equitable tolling" and addressed "the appropriate standard for gauging when attorney error amounts to an extraordinary circumstance." *Id.* at 1221. In determining the appropriate standard, the Eleventh Circuit examined three Supreme Court decisions: *Lawrence v. Florida*, 549 U.S. 327

10

(2007) (equitable tolling unwarranted where attorney's failure to determine correct limitations period was caused by failure to conduct rudimentary research); *Holland v. Florida*, 560 U.S. 631 (2010) (counsel's professional misconduct, including failure to communicate with client and provide him with necessary information amounted to extraordinary circumstances warranting equitable tolling); and *Maples v. Thomas*, 565 U.S. 266 (2012) (holding that "under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him.").

The instant case is consistent with *Maples* and *Holland*, which involved an attorney's misconduct in handling client's case and communicating with that client. Similar to the attorneys in *Maple* and *Holland*, Mr. Saville "essentially abandoned" his clients, stopped communicating with them and most importantly, never informed them of important litigation events, in particular the Order and the Hearing Order, resulting in his clients potentially being sanctioned without ever knowing about it. *See Maples*, 565 U.S. at 282 and *Holland*, 560 U.S. at 659 (ALITO, J., concurring in part and concurring in judgment).

*Cadet* and *Lawrence*, on the other hand, are fully distinguishable from the instant action, as they did not involve a breakdown of the attorney/client relationship and instead examined simple attorney negligence. *See also Farabee v. Clarke*, 967 F.3d 380, 392 (4th Cir. 2020) ("Certainly, a client is usually bound by counsel's actions since counsel acts as the client's agent. . . . However, a **"markedly different situation is presented ... when an attorney abandons his client."** In such a situation, . . ., "an attorney no longer acts ... as the client's representative ... [and] [h]is acts therefore cannot fairly be attributed to the client.") (internal citations omitted) (emphasis in original) and *United States v. Oriakhi*, 394 Fed. Appx. 976, 977 (4th Cir. 2010) ("While attorney

11

misconduct must be more egregious than a 'garden variety claim of excusable neglect' to be considered an extraordinary circumstance, the requirement might be met by a showing of an extraordinary failure by the attorney to provide reasonably competent legal work, to communicate with his client, to implement his client's reasonable requests, to keep his clients informed of key developments in their cases, or to never abandon a client.") (quoting *Holland*).

### i. *Holland v. Florida*, 560 U.S. 631 (2010) establishes that Defendants should not be bound by Mr. Saville's conduct.

In *Holland*, the plaintiff was convicted of murder, which was affirmed on appeal by the Florida state courts. *Id.* at 635. Following his conviction, counsel was appointed to handle all Mr. Holland's post-conviction proceedings. *Id.* at 635-36. Shortly after being appointed, Mr. Holland's counsel filed a state habeas corpus petition, tolling the limitation period for filing a federal petition, which would begin to run again upon a final decision on the state petition. *Id.* at 636. After his state petition was denied, Holland's appointed lawyer petitioned for review with the Florida Supreme Court. *Id.* While the state appeal was pending, communications between Mr. Holland and his counsel broke down, he was not kept sufficiently advised of the status of his case on appeal, and his attorney did not communicate with him for an extended period time. *Id.* at 636-37. As detailed above, the instant case also involves a communication breakdown between an attorney, Mr. Saville, and his clients (the Defendants).

The Florida Supreme Court ultimately denied Mr. Holland's state petition, triggering the federal deadline, which came and went without a petition being filed. *Id* at 638. However, just like Defendants in the instant case (as it relates to the Order and the Hearing Order), Mr. Holland's counsel did not inform him of the Florida Supreme Court decision and, therefore, Mr. Holland was unaware the federal deadline had passed. *See id.* He only eventually found out about the Supreme

12

Court decision (and by extension the federal filing deadline), on his own, much like Defendants in this case found out about the Order and Hearing Order.  *See id at* 639.

When Mr. Holland learned of the state appellate decision, he immediately filed a *pro se* federal habeas corpus petition.  *Id.* at 639-40.  Mr. Holland's attorney then refused to take his calls and contacted Holland solely by letter.  *Id.*  Ultimately, the attorney's representation was terminated, and he was replaced.  *Id.*  Although the attorney had severely prejudiced Mr. Holland's rights, the district court found that the situation was not extraordinary and "was at worst merely 'negligent.'" *Id.* (citing the district court opinion).  The Eleventh Circuit agreed and held:

> We will assume that [the lawyer's] alleged conduct is negligent, even grossly negligent. But in our view, no allegation of lawyer negligence or of failure to meet a lawyer's standard of care—in the absence of an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part—can rise to the level of egregious attorney misconduct that would entitle Petitioner to equitable tolling. *Id.* at 644 (quoting *Holland v. Florida*, 539 F.3d 1334, 1338 (11th Cir. 2008), rev'd, 560 U.S. 631 (2010)).

The Supreme Court reversed, holding as follows:

> "In this case, the 'extraordinary circumstances' at issue involve an attorney's failure to satisfy professional standards of care. The Court of Appeals held that, where that is so, even attorney conduct that is "grossly negligent" can never warrant tolling absent "bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part." **But in our view, the Court of Appeals' standard is too rigid**" *Id.* at 649 (quoting *Holland*, 539 F.3d at 1338)(emphasis supplied).

The Supreme Court's *Holland* decision is instructive and directly on point here.  Mr. Saville, who we now know was mentally impaired, and acting with his own self-preservation in mind, made materially incorrect statements to the Court and to Plaintiff's counsel concerning his handling of Plaintiff's discovery requests.  When he repeatedly promised that he was working to remedy the discovery deficiencies, he did so without involving the Defendants, who, by necessity, would need to provide things such as the verified interrogatory responses sought by Plaintiff.

13

In fact, from the moment Mr. Saville began defaulting on his client's discovery obligations, and then making promises on their behalf without communicating what was happening to them, it cannot be credibly disputed that he was putting his interest ahead of those of his clients. Moreover, the temporary relief he obtained for himself by doing this, only further harmed the Defendants. Thus, while this Court may have found in its Order that Defendants engaged in conduct amounting to bad faith, if anyone acted in bad faith, it was unfortunately the mentally impaired Mr. Saville, and not the Defendants, thus further justifying relief from his conduct.[6]

With Mr. Saville's loyalty tilted in favor of himself instead of his clients, even the prior 11th Circuit standard rejected as "too rigid" by the Supreme Court, is satisfied. *See Id.* at 649. However, as the Supreme Court has already explained, Defendants do not need to meet that lofty standard. *Id.* Rather, "at least sometimes, professional misconduct that fails to meet the Eleventh Circuit's standard could nonetheless amount to egregious behavior and create an extraordinary circumstance . . . ." *Id.* at 651. Accordingly, in *Holland*, the Supreme Court discussed with approval, several lower appellate court opinions which "specifically held that unprofessional attorney conduct may, in certain circumstances, prove 'egregious' and can be 'extraordinary' even though the conduct in question may not satisfy the Eleventh Circuit's rule." *Id.*[7]

---

[6] Mr. Saville's medical condition undoubtedly significantly impacted his conduct. *See generally* Pruzinsky

[7] The cases approvingly cited by the Supreme Court include: *Nara v. Frank,* 264 F.3d 310, 320 (C.A.3 2001) (ordering hearing as to whether client who was "effectively abandoned" by lawyer established an extraordinary circumstance); *Baldayaque v. United States*, 338 F.3d 145, 152-53 (2d Cir. 2003) (finding that attorney's failure to perform essential services, communicate with the client, and conduct basic legal research, amounted to an extraordinary circumstance); *Spitsyn v. Moore*, 345 F.3d 796, 800-02 (9th Cir. 2003), *as amended* (Nov. 3, 2003) (finding that "extraordinary circumstances" may warrant tolling where lawyer denied client access to files, failed to respond to his client's communications); and *United States v. Martin,* 408 F.3d 1089, 1096 (C.A.8 2005) (finding extraordinary circumstances where his attorney retained files and made misleading statements).

14

While clients are typically charged with their lawyer's "garden variety" claims of attorney negligence, (such as the failure to calculate a deadline) the attorney failures detailed in *Holland* are similar to the extraordinary failures of Mr. Saville, who (although perhaps not of sound mind at the time) "violated fundamental canons of professional responsibility, which require attorneys to perform reasonably competent legal work, to communicate with their clients, to implement clients' reasonable requests, to keep their clients informed of key developments in their cases, and never to abandon a client." *Id.* at 652–53 (internal citations omitted).[8]

> ii. ***Maples v. Thomas*, 565 U.S. 266 (2012) further establishes that Defendants should not be bound by Mr. Saville's conduct.**

*Maples v. Thomas*, 565 U.S. 266 involved another plaintiff who was convicted by a state court and then sought federal habeas corpus relief. 565 U.S. 266. Two New York based *pro bono* lawyers appeared *pro hac vice* to represent Mr. Maples post-conviction with a local counsel who "would facilitate their appearance but would undertake no substantive involvement in the case." *Id.* at 270. While a state post-conviction petition was pending, the New York lawyers left their firm and could not continue representing Mr. Maples, but never moved to withdraw from his case. *Id.* at 270-71. When the Maples' state court petition was denied, it was mailed to the New York firm but was returned as undeliverable. *Id.* "With no attorney of record in fact acting on Maples'

---

[8] Justice Alito wrote a noteworthy concurring opinion in *Holland*, in which he indicated that he wrote separately "to set forth [his] understanding of the principles governing the availability of equitable tolling in cases involving attorney misconduct." *Id.* at 655. Justice Alito focused on the fact that "Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word," which is exactly what happened in the instant case when Mr. Saville ceased communications with his clients and began making representations and promises that he could not possibly live up to, as in order to be fulfilled, they necessarily required client involvement in the most basic sense.

15

behalf, the time to appeal ran out." [9] *Id.* at 271. Mr. Maples then sought federal habeas corpus relief, but this request was denied as untimely. *Id.* The Eleventh Circuit affirmed. *Id.*

The Supreme Court granted review to determine "whether, on the extraordinary facts of Maples' case, there is 'cause' to excuse the default" based upon the plaintiff's argument that "the lawyers he believed to be vigilantly representing him had abandoned the case without leave of court, without informing [him] they could no longer represent him, and without securing any recorded substitution of counsel." *Id.* The Supreme Court reversed. *Id.*

In reversing, the Supreme Court noted that cause exists to excuse a party's procedural default when "something external" to the litigant, which cannot fairly be attributed to him, impeded his effort to comply with a procedural rule. *Id.* at 280-81. While that "something" cannot solely be the litigant's counsel's negligence, "[a] markedly different situation is presented, however, when an attorney abandons his client without notice, and thereby occasions the default. Having severed the principal-agent relationship, an attorney no longer acts, or fails to act, as the client's representative." *Id.* (citing 1 Restatement (Third) of Law Governing Lawyers § 31, Comment *f* (1998) ("Withdrawal, whether proper or improper, terminates the lawyer's authority to act for the client.")). The lawyers "acts or omissions therefore 'cannot fairly be attributed to [the client].'" *Id.* at 281. (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012)) and (citing *Jamison v. Lockhart*, 975 F.2d 1377, 1380

---

[9] Alabama required out of state lawyers to associate with local counsel whose name must "appear on all notices, orders, pleadings, and other documents filed in the cause," and, unlike this Court's Local Rule 83.1(d), required that local counsel "accept joint and several responsibility with the foreign attorney to the client, to opposing parties and counsel, and to the court or administrative agency in all matters [relating to the case].'" *See Id.* at 274 (citing Rule Governing Admission to the Ala. State Bar VII VII(C)). Local Counsel's (Seth P. Buskirk and Don T. Evans, Jr.) conduct is not implicated by the instant Motion for Sanctions. While they were initially engaged solely by Mr. Saville, with no contact directly with Defendants until June 2021, they agreed to continue representing Defendants in this Local Civil Rule 83.1(d) capacity following Kennedys' engagement.

(C.A.8 1992) (attorney conduct may provide cause to excuse a state procedural default where, as a result of a conflict of interest, the attorney "ceased to be [petitioner's] agent") and *Porter v. State,* 339 Ark. 15, 16–19, 2 S.W.3d 73, 74–76 (1999) (finding "good cause" for petitioner's failure to file a timely habeas petition where the petitioner's attorney terminated his representation without notifying petitioner and without taking "any formal steps to withdraw as the attorney of record")).[10]

The *Maples* Court then relied on its decision in *Holland*, and in distinguishing between attorney negligence and abandonment, stated ". . . under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him." *Maples*, 565 U.S. at 283.

This is the precise situation that exists in the instant case. Like the attorneys in *Maples*, Mr. Saville effectively abandoned his representation of Defendants, and other clients, perhaps as far back as January 2020, when he ceased meaningful communications with them. *See* Pruzinsky at ¶5. This in turn, caused them, through no fault of their own, to miss procedural deadlines and subsequent additional deadlines set by the Court. As the Supreme Court concluded in *Maples*, under such circumstances, the correct result is a severing of the principal/agent relationship, thus absolving Defendants from liability for the actions of their attorney.

   **c) If sanctions are imposed, judgment by default or the striking of Defendants' Answer is not warranted.**

"When the sanction involved is judgment by default, the district court's 'range of discretion is more narrow' because the district court's desire to enforce its discovery orders is confronted head-on by the party's rights to a trial by jury and a fair day in court." *Mut. Fed. Sav. & Loan Ass'n*

---

[10] Parenthetical text taken from *Maples*, 565 U.S. at 281.

17

*v. Richards & Associates, Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (quoting *Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494, 503–04 (4th Cir.1977), *cert. denied,* 434 U.S. 1020, (1978)). As previously indicated, "those competing interests require the application of a four-part test: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." *Id.* "Such an evaluation will insure that only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, will result in the extreme sanction of dismissal or judgment by default." *Id.*

While Mr. Saville failed to properly handle his clients' case through the discovery process, the underlying circumstances make clear that this is not the "most flagrant case." Rather, it represents an extremely unfortunate situation where an attorney struggling with his own mental health ultimately abandoned his clients. Applying these factors to the instant case shows that the extreme remedy of a default judgment or the striking of an answer and defenses is unwarranted.

### i. There was no bad faith on the part of the Defendants.

With respect to the first factor, the non-complying party's bad faith in the discovery process, this Court previously found that "Rather than provide [discovery] responses, the Insurers have given USTC nothing but misrepresentations, missed deadlines, and broken promises. Such a course of conduct over a long time compels the conclusion that the non-responsive Insurers and their counsel have acted in bad faith." [D.E. 86, pg. 16]. However, as discussed above, the numerous misrepresentations, missed deadlines, broken promises were due to Mr. Saville acting solely on his own, without communicating with Defendants and therefore, those actions are not

18

attributable to Defendants. As the facts clearly demonstrate, Mr. Saville effectively abandoned his clients, began acting without their authority, in a manner that was contrary to their interests, and outside of their agency relationship. *See discussion supra* at pp. 8-17.

> ### ii. The prejudice Plaintiff claims to have suffered does not justify a default judgment or striking their answer and defenses.

With respect to the prejudice it has allegedly suffered, Plaintiff claims that it has incurred extra unnecessary expenses while attempting to obtain discovery and prepare for this case and does not have the insurance money to which it is entitled from the insurance policies issued by defendants. [D.E. 92, pg. 6-7]. While offering no explanation as to why, it also claims to have incurred additional expert expenses, including those involving "tobacco industry experts," which it asserts would not have otherwise been necessary. *Id.* At the Hearing, Plaintiff's counsel identified the "costs incurred chasing the insurers for discovery responses[11] and the time value of money as specific harms that USTC has suffered . . ..", along with pre-judgment interest. [D.E. 97, pg. 9, fn. 6] (citing N.C. Gen. Stat. Ann. § 58-63-15 and § 24–1, 5(b)). While Plaintiff's entitlement to insurance proceeds is still an issue to be determined when the merits of this case are examined, any of its other alleged "prejudices" could be cured monetarily. As such, a default judgment would not be concomitant with the prejudice identified.[12]

---

[11] In addition, though Plaintiff complains about the legal expenses it incurred in prosecuting this case, it is worth noting that Plaintiff was not shy about expending fees to file a Motion for Partial Summary Judgement based on Mr. Saville serving responses to Requests for Admission one day late, which it knew or should have known would be unsuccessful. *See* [D.E. 66].

[12] The instant case is very different from *Barclift v. Sentara Sentara Reg'l Med. Ctr., LLC*, No. 2:17-CV-00008-D, 2018 WL 1721947, at *1 (E.D.N.C. Mar. 20, 2018), *report and recommendation adopted sub nom. Barclift v. Sentara Senatra Reg'l Med. Ctr., LLC.*, No. 2:17-CV-8-D, 2018 WL 1720760 (E.D.N.C. Apr. 9, 2018) which was also decided by this Court. In *Barclift*, a *pro se* civil rights plaintiff (as opposed to his attorney) completely abandoned his own case, warranting a dismissal with prejudice as a sanction. Unlike *Barclift*, where the plaintiff refused to provide any discovery, here thousands of pages of requested documents have been produced, numerous Defendant depositions have taken place, and at least some interrogatory responses were previously supplied (and now supplemented). Moreover, that "was not a case

### iii. No punishment can deter the cause of Defendants' discovery shortcomings – mental health issues and abandonment by their counsel.

With respect to the need for deterrence, the root cause of Defendants' failures is clearly Mr. Saville's ongoing mental health issue, which led him to abandon any meaningful representation of Defendants. No level of punishment this could Court deliver against Defendants would deter an attorney from suffering such unfortunate issues. Furthermore, since learning of the Court's prior Orders, Defendants have been working diligently with newly appointed to counsel to right this matter's course. To be clear, Defendants have now received the Court's admonishment to get this matter back on track such that it can be litigated on the merits and are expending the effort to do so.

For example, each of the Underwriters have now served the individually verified interrogatory responses that Plaintiff has requested, as well as individual Fed. R. Civ. P. 26(a)(1) disclosures. Tricarico at ¶21. Additionally, Defendants' new counsel is working to resolve the privilege log issues identified by Plaintiff (*Id.*), and the individual Defendant insurers are proceeding through the arduous task of producing all of the documents the Court has ordered them to produce. *See* Underwriter Declarations & Tricarico at ¶ 22. He has also invited the Plaintiff's attorney to prioritize the discovery Plaintiff needs to move this case forward. Tricarico at ¶ 13 & 15.

### iv. Lesser sanctions would not be inadequate.

Finally, as grounds to demonstrate that an award of lesser sanctions would be inadequate, Plaintiff identifies the warnings the court provided at the Hearing and in Judge Boyle's Order denying the First Motion to Compel [D.E. 66], which, due to Mr. Saville's abandonment of his

---

of attempted compliance, or even haphazard compliance. [The plaintiff] did not comply with [the defense] requests or the court's order at all." *Id.* Even Mr. Saville's conduct was not so egregious. *See supra.*

clients, never made it to them. *See* [D.E. 92, pg. 8-9]. No other reasons are presented. *See id.* This case seeks a monetary recovery. Plaintiff claims to have unnecessarily spent additional sums seeking the discovery it believes it is entitled to and has, without explaining why, allegedly retained experts that it would not have otherwise hired had Defendants only provided certain discovery. Thus, to the extent the Court believes, after learning of all the extenuating circumstances of this case, that an award of sanctions is still warranted, lesser, more appropriate sanctions would consist of a monetary award reimbursing Plaintiff for any additional out of pocket costs it incurred in seeking discovery, or as a consequence of not receiving it in a timely fashion. This, of course, would be consistent with the general approach courts take, of awarding lesser sanctions first, before entering judgment by default or dismissing a case.

For example, in *Velasquez v. Salsa & Beer Rest., Inc.,* No. 5:16-CV-655-D, 2018 WL 4855207, at *1 (E.D.N.C. Oct. 5, 2018), this Court granted a plaintiff's motion to compel and for sanctions, due to the defendants' failure to provide responses to interrogatories and requests for production.

In granting plaintiff's motion to compel and for sanctions, the Honorable James C. Dever, III expressly warned each defendant in his first order "that failure to comply with the court's order **may result in __additional__ sanctions**, up to and including striking the non-complying defendant's answer." *Id.* (emphasis supplied). After granting the first motion for sanctions, the plaintiff moved for attorney's fees; the defendant did not respond; and its lawyer withdrew. *Id.* Following, these motions, in a <u>second</u> order, the court directed the defendants to either have new counsel appear or file a notice of self-representation and "warned each defendant that failure to comply with the court's order may result in sanctions up to and including a default judgment." *Id.*

21

A month and a half later, Judge Dever entered an additional <u>third order</u> awarding attorney fees. *Id.* Finally, after another four months went by, Judge Dever found "Defendants have blatantly disregarded the court's orders and warnings. Defendants have not produced the required discovery, caused new counsel to file a notice of appearance or filed a notice of self-representation, or paid plaintiff's attorney's fees." *Id.* at 2. Only after the defendants' conduct was not corrected after the one order granting sanctions, an order granting attorneys' fees, and multiple other warnings, did the court finally enter default judgment. *Id. See also Swan Racing Co., LLC v. XXXtreme Motorsport, LLC*, No. 514CV00155RLVDCK, 2016 WL 5928813, at *6 (W.D.N.C. Oct. 11, 2016) ("This Court **already imposed the lesser sanction** of holding Defendants responsible for Swan and Davis's reasonable expenses, including attorney's fees, for Defendants' failure to comply with Swan and Davis's discovery requests. (Doc. 47). Furthermore, the [c]ourt has repetitively warned Defendants that their failure to comply with the Court's order would result in additional sanctions, including the entry of a default judgment, yet Defendants have shown little or no intent of complying with this Court's orders.") (emphasis supplied).

In the instant case, no sanctions have been awarded against Defendants at all, and Defendants just now learned of the serious deficiencies exhibited by their prior counsel, which they are tirelessly attempting to remedy. Defendants should at least have the opportunity to demonstrate their willingness and ability to adhere to their discovery obligations, now that they have able and lucid counsel handling the case, before the Court issues any sanctions whatsoever, let alone the most drastic of remedies now sought by Plaintiff.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion for Sanctions should be denied. The acts and omissions about which Plaintiff complains were solely caused by the fact that Defendants prior

22

counsel effectively abandoned his attorney / client / agency relationship he had with them. Under established Supreme Court precedent, Defendants should not be bound by their prior counsel's deficiencies under these unusual, and extremely unfortunate circumstances. To the extent sanctions are deemed appropriate, sanctions in the form of a default judgment or the striking of defenses or an answer are unwarranted and should not be imposed.

Dated: July 23, 2021

CLARK, NEWTON & EVANS, PA

By: /s/ Seth P. Buskirk
NC BAR 36664
509 Princess Street
Wilmington, NC 28401
Tel: (910) 762-8743
Fax: (910) 762-6206
spb@clarknewton.com
Local Civil Rule 83.1(d) Counsel for Defendants

By: /s/Michael J. Tricarico
Kennedys CMK LLP
570 Lexington Ave.
New York, NY 10022
212-252-0004
Michael.Tricarico@KennedysLaw.com
New York Bar. No. 2466878
Attorney for Defendants Certain Underwriters at Lloyd's

23

**CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system and notification will be sent to the following:

Mark E. Anderson      manderson@mcguirewoods.com, cguerrero@mcguirewoods.com,

jmurphy@mcguirewoods.com

Don T. Evans, Jr      dte@clarknewton.com, lao@clarknewton.com

Seth Peter Buskirk      spb@clarknewton.com, billing@clarknewton.com,

jas@clarknewton.com, spbuskirk@gmail.com

Shelby S. Guilbert      sguilbert@mcguirewoods.com

Amy E. Dehnel      adehnel@mcguirewoods.com, smallavarapu@mcguirewoods.com

James A. Saville      jsaville@hillrivkins.com

Michael J. Tricarico      michael.tricarico@kennedyslaw.com

Dated:  July 23, 2021

/s/Michael J. Tricarico