IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-00430-BO

| | |
|---|---|
| U.S. TOBACCO COOPERATIVE, INC., | ) |
| | ) |
| v. | ) **DECLARATION OF** |
| | ) **MICHAEL J. TRICARICO** |
| CERTAIN UNDERWRITERS AT | ) |
| LLOYD'S SUBSCRIBING TO POLICY | ) |
| NUMBERS B1353DC1703690000 AND | ) |
| B1353DC1602041000 | ) |

Michael J. Tricarico, on oath, declares as follows:

1. I am a partner in the New York office of Kennedys CMK LLP ("Kennedys"). I offer this declaration on behalf of Defendants Certain Underwriters at Lloyd's Subscribing to Policy Numbers B1353DC1703690000 and B1353DC1602041000 ("Underwriters" or "Defendants") in opposition to Plaintiff U.S. Tobacco Cooperative, Inc.'s ("USTC" or "Plaintiff") motion for sanctions.

2. Some of the information contained in this declaration was initially set forth in a declaration that I filed in connection with Defendants' previously filed Motion for Extension of Time to Respond to Plaintiff's Motion for Sanctions. It is repeated herein for the Court's ease of reference.

3. On or about June 15, 2021, I was contacted by Patrick Foss, a partner in Kennedys' London office, and was advised that Richard Foulger, the Head of Claims at the AEGIS Syndicate 1225 at Lloyd's of London, wished for me to contact James Saville ("Mr. Saville") of Hill Rivkins, LLP ("Hill Rivkins") to discuss this matter with him.

4. At that time, I was informed that Mr. Saville was the attorney representing Defendants in this matter. Specifically, after further communicating with Mr. Foulger and Mr. Foss, I learned that Mr. Foulger wished for me to check in with Mr. Saville regarding that status of this litigation, and to determine whether the Defendants' interests were being properly represented.

5. Apparently, Mr. Saville had not been providing updates to his clients, and there was some concern about his lack of responsiveness to their recent inquiries.

6. Shortly after my initial communications with Mr. Foulger and Mr. Foss, I was copied on an email from Mr. Saville in which he indicated that he would soon be calling me to discuss the case. However, he never did.

7. Immediately after my initial contact with Messrs. Foss and Foulger, I had not been formally retained in this matter, and did not have any specific knowledge about the claims asserted therein, or where in North Carolina this litigation was pending. However, I did know who the parties were, and late Friday, June 18, 2021, by way of an internet search, I was able to locate an index number, and began reviewing the Court's docket for this proceeding. At that point, among other things, I located and reviewed the following materials, which I relayed back to Mr. Foss and Mr Foulger:

(a) The Motion for Sanctions and Memorandum of Law in Support dated May 24, 2021 [D.E. 91 and 92].

(b) The transcript from the hearing before Magistrate Judge, Robert T. Numbers, II that took place on May 3, 2021 [D.E. 92-1 Ex. A].

(c) The order issued by Magistrate Numbers on April 9, 2021 [D.E. 86].

(d) The order issued byMagistrate Numbers on April 13, 2021 [D.E. 88].

8. I was subsequently advised that none of these documents had ever been provided to Underwriters, nor were Underwriters even aware that there were any motions

pending against them, let alone one for sanctions that had not been responded to, or that any adverse discovery rulings had been issued in favor of the Plaintiff.

9. Over the weekend of June 19-20, 2021, I continued to further review the Court docket and relayed what I had determined to my partner, Mr. Foss.

10. As of June 21, 2021, my firm was formally retained in this matter, and I then contacted local counsel, Clark, Newton & Evans, P.A. ("Clark Newton"), to advise them that Kennedys would be replacing Mr. Saville and Hill Rivkins as counsel for the Defendant.

11. Seth Buskirk of Clark Newton assisted me in preparing a Notice of Special Appearance, which, after receiving electronic filing permissions from the Court on June 23, 2021, I filed later that day.

12. On June 21, 2021, I also reached out to Mr. Saville by phone several times to gain his assistance in transferring the file to my firm, and to discuss the status of the case with him, including any additional communications he may have had with counsel for the Plaintiff. He did not respond.

13. On June 21, 2021, I also called Shelby Gilbert, the lead attorney for the Plaintiff, to advise that I would be taking over for Mr. Saville. During that call, I explained to him that Mr. Saville had not informed my client of the ongoing discovery disputes in this action, the Court's orders, or the currently pending Motion for Sanctions [D.E.'s 91- 92]. I also asked Mr. Gilbert if he could assist me in providing responses to the outstanding discovery owed by my clients by prioritizing that discovery in order of importance. He instead referred me to the Court's prior orders, and some of the other papers that had been filed in this suit.

14. Over the course of the next day, June 22, 2021, there were continuous attempts to follow up with Mr. Saville and his firm to gain access to their files for this case and information regarding recent goings on, however, no response was received.

15. On June 23, 2021, I had a follow up discussion with Mr. Gilbert (the Plaintiff's attorney), during which I again explained that I did not have any of the files in this case, had not been contacted by Mr. Saville, and was representing a client that was completely unaware of the currently pending Sanctions Motion or the discovery abuses alleged therein. I again expressed that I would appreciate it if he would provide clarification/prioritization of the discovery owed. In response, he again politely referred me to the Court's prior orders.

16. Finally, late in the day on June 23, 2021, I received a communication from Hill Rivkins. It came not from Mr. Saville, who has still never responded to my requests to discuss the status of this case, but rather from an individual named John Sullivan, who provided a Drop Box link from which to download some of his firm's files for this matter. Subsequently, additional files were provided.

17. After receiving what appear to be most of Hill Rivkins' files for this matter, I learned from another Hill Rivkins attorney, Anthony Pruzinsky, that Mr. Saville has taken a leave from the practice of law due to ongoing mental health issues. (*See* Declaration of Anthony Pruzinsky filed in connection with this motion.) To this day, I still have never spoken with Mr. Saville, and have now learned that because of his mental health issues, he has been instructed not to contact me.

18. Because Mr. Saville is not presently practicing and is instead receiving much needed treatment for his condition, the task of discerning what has been done by him during the course of discovery has been a difficult one, and while Mr. Pruzinsky, has attempted to assist, he has virtually no knowledge of this case. He has also enlisted a very junior associate to provide further help, and while that associate worked with Mr. Saville on this matter for what I understand to have been a short period of time, his knowledge of the case is also rather limited.

19. Given these hurdles, along with no real assistance or guidance from the Plaintiff, the task of determining what has transpired during the course of discovery in this case, and how to prioritize the Underwriters' responses, has largely fallen upon my firm, local counsel (who was not involved in the discovery process), Mr. Pruzinsky, and the inexperienced Hill Rivkins associate. This has made it difficult for Underwiters to more promptly comply with the Court's most recent April 9, 2021 discovery order.

20. Nevertheless, in an effort to try and provide as much of that outstanding discovery as possible, since becoming involved, my firm (including my colleagues in London) has been in mostly daily contact with the insures involved in this suit, all of whom are based in the United Kingdom. Given the number of insurers, the time differences, and the volume of the discovery the Court has ordered, this has been a monumental undertaking. However, in spite of these challenges, during this short time period, we have made great progress in obtaining information from the thirteen Underwriters involved with this claim.

21. As of today, separate verified interrogatory responses have been provided on behalf each Underwriter, and each Underwriter has provided a Rule 26(A)(I) Disclosure specific to the identified Underwriter. Additionally, I have been working with Hill Rivkins to correct any perceived issues with the Underwriters' privilege log, and hope to have those issues resolved shortly.

22. Finally, my firm continues to gather responsive documents for production from the Underwriters. While that process has been a somewhat arduous one given the breadth of the requests (i.e., information pertaining to mold claims handled over the past 10 years) and because the Court has ordered Underwriters to identify the specific request that each produced document pertains to, that process has been a slow one. Nevertheless, I presently anticipate that we will soon begin producing further document discovery on a rolling basis.

23. I declare under penalty of perjury that to the best of my knowledge, the foregoing is true and correct.

Executed on July 23, 2021.

_____
MICHAEL J. TRICARICO