IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-00430-BO

| | |
|---|---|
| U.S. TOBACCO COOPERATIVE, INC., | ) |
| | ) |
| v. | ) **DECLARATION OF** |
| | ) **ROBYN BIRCH** |
| CERTAIN UNDERWRITERS AT | ) |
| LLOYD'S SUBSCRIBING TO POLICY | ) |
| NUMBERS B1353DC1703690000 AND | ) |
| B1353DC1602041000 | ) |

Robyn Birch, on oath, declares as follows:

1. I am Senior Claims Adjuster at the Lloyd's Syndicate 1301 ("StarStone") at Lloyd's of London. I have held this position for 5 years and have worked in the London insurance market for 11 years.

2. StarStone is one of the following Underwriters at Lloyd's with respect to Policy Numbers B1353DC1703690000 and B1353DC1602041000.

3. On or about June 23, 2021, we were informed by the lead Underwriters for our placement that:

(a) Lead Underwriters had become concerned about the lack of reporting from Mr. James Saville of Hill Rivkins LLP ("Hill Rivkins"), who had been instructed by the leaders in the standard way to represent all Underwriters in the proceedings.

(b) On or about June 17, 2021, lead Underwriters had made contact with Kennedys Law LLP ("Kennedys") and requested that Kennedys contact Mr Saville in order to obtain a second opinion on the status of the proceedings.

(c) Mr. Michael Tricarico of Kennedys' New York office had conducted searches of the court docket for these proceedings and located and provided to lead Underwriters a number of orders and motions of which lead Underwriters were completely unaware and in respect of which Underwriters were in breach.

(d) As a result, lead Underwriters had formally dis-instructed Hill Rivkins.

4. I understand that on June 25, 2021, Kennedys filed a Motion for an Extension of Time in order for Underwriters to respond to the motion for sanctions that they are presently responding to, and that the Court has granted that motion. StarStone appreciates the opportunity the Court has afforded it to be heard.

5. Prior to June 23, 2021, I had not seen or been informed of any of the Court's orders. I was not aware that Underwriters had breached any orders entered by the Court, nor was I aware that the Plaintiff was seeking sanctions.

6. I was also unaware of any outstanding requests for discovery or interrogatories from StarStone. In many cases, disclosure is not required from following Underwriters because they have little if any additional documentation on the claim or underwriting of the risk than that held by the lead Underwriters.

7. As a following Underwriter, we had very limited involvement in the underwriting of this risk or in the handling of the claim. The underwriting of this risk was conducted via a "line slip"; which means that following Underwriters are automatically bound to the slip pursuant to a facility previously agreed to with the broker. In respect of claims handling, under standard Lloyd's market procedures lead Underwriters are responsible for the handling of a claim, including corresponding with the insured and instructing experts, adjusters and attorneys. Thus, the fact that we had not been asked to provide disclosure was not surprising to StarStone as any required disclosure is usually provided by the leaders.

8. As previously indicated, I only became aware of the outstanding issues on June 23, 2021, when we received a market wide notification from the lead Underwriters on our placement. I had received no notice about any outstanding discovery or interrogatory requests or court orders.

64032640.1

Page 2 of 4

Case 5:19-cv-00430-BO   Document 102-14   Filed 07/23/21   Page 2 of 4

9. Now that we have been informed of what needs to be done pursuant to Court's orders, we are working hard to comply as quickly as we can. However, this has been a time-consuming process due to the amount of documentation to be collated and provided, particularly in relation to other mold and bad faith claims over the last 10 years across various classes of business. As noted above, as a following Underwriter, StarStone relies on the lead Underwriter to handle the claim. Claim-related documentation is therefore largely maintained on the shared ECF claims system used by the Lloyd's market. Only minimal information is contained on StarStone's claims system. Although we understand that the lead Underwriter will be producing claim-related materials from ECF, in an abundance of caution, and in order to comply with the Court's order, StarStone will be separately producing them as well, along with the limited information available from its claim system. Although claim-related emails are routinely saved into the claims file, out of an abundance of caution, we instructed our IT department to search the email mailboxes of the claims examiners who handle or handled this claim, their supervisors and the department manager for all emails relating to U.S. Tobacco, each of the claims numbers associated with U.S. Tobacco's claims, and the policies, from July 20, 2018 to the present. Responsive emails have been provided to counsel. As this risk was underwritten via a line slip, StarStone's underwriting file is similarly limited. StarStone has searched for and provided to counsel all responsive materials in its possession regarding the underwriting of the policies at issue. We similarly instructed our IT department to search for and provide all emails to or from the underwriter, his supervisor and the underwriting assistant sent or received from January 1, 2015 to December 31, 2018 that contain one or more of the following terms: Rutherfoord, Rutherford, UCR B1353DB1602041A02-2016 YOA, UCR B1353DB1703690A01-2017 YOA, B1353DB1602041A02, B1353DB1703690A01, B1353DC1703317000,

B1353DC16016890000, 56601V17AAG, 56601V17ABG, 56601V16AAG, or US Tobacco. Responsive emails have been provided to counsel. StarStone's claim system does not include a claim type indicator or any other field that would enable it to easily identify whether a policyholder or a claimant has asserted a claim arising from the presence of or exposure to mold. We therefore engaged our IT department to run a search of our claims databases and all fields therein for the terms "mold" or "mould" and generated a report listing all such cases. Using that list, our colleagues in IT were able to pull together all of the notes for those claims as well as all documents associated with them. This process took dozens of man hours to complete and was highly disruptive. We also separately inquired of each of the members of the claims staff whether they had handled any claims related to mold in the last ten years. StarStone's claims systems similarly do not contain fields that would readily identify claims in which bad faith has been alleged by a policyholder. However, since 2014 or so, the claims and litigation legal teams have maintained lists of matters in which bad faith claims have been asserted against StarStone. Using those documents, we have provided to counsel a list of all cases, across all lines of business, in which bad faith claims have been asserted against StarStone.

10. I wish to apologize to the parties and to the Court for the lack of response on our part due to the reasons discussed above, and at the same time reiterate that we are working hard to provide the discovery ordered by the Court.

11. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 23, 2021.

_____
ROBYN BIRCH